ACCEPTED
06-15-00032-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/16/2015 1:25:17 PM
DEBBIE AUTREY
CLERK

No. 06-15-00032-CV

**In the Court of Appeals**

**Sixth Judicial District**

**Texarkana, Texas**

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
9/16/2015 1:25:17 PM
DEBBIE AUTREY
Clerk

*In re* **CARLTON SEWELL, Relator**

**Original Proceeding from the County Court at Law of Hopkins County, Texas**

**PETITION FOR WRIT OF MANDAMUS**

**REAL PARTIES IN INTEREST'S MOTION FOR RECONSIDERATION EN BANC**

COME NOW, Real Parties In Interest ("RPI"), requesting the Court to grant RPI a reconsideration en banc on Relator's ("Sewell's") Petition for Writ of Mandamus, and for cause thereof, would respectfully show the Court as follows:

On August 25, 2015 the Court entered an order, conditionally granting the writ of mandamus in this case. On September 2, 2015, the Court denied RPI's Motion For Rehearing.

Central to the Court's Opinion was the merits-preclusive effect of Admissions 2 and 4, which transformed the legal standard in the case from the "conscious indifference" standard, into the due process mandated, "flagrant bad faith or callous disregard" standard. The Court, finding no evidence of "flagrant bad faith or callous disregard" on the part of Sewell in failing to timely answer the Request for Admissions, conditionally granted the writ of mandamus. The RPI would note that in their "Prayer" in their Response to Carlton Sewell's Petition For Writ of Mandamus, the RPI prayed the Court to strike Deemed Admissions 2 and 4. (See RPI's Response to Carlton Sewell's Petition For Writ of Mandamus, attached as Exhibit A).

1

RPI believe the issue in this case is a matter of first impression in Texas. The issue is whether where the failure to respond to a request for admissions is the result of "conscious indifference," but not the result of "flagrant bad faith or callous disregard," can the proponent of the deemed admissions save the non-merits-preclusive deemed admissions by striking or otherwise eliminating the merits-preclusive deemed admissions, such that due process concerns are not implicated and, therefore, the "conscious indifference" standard applies and not the "flagrant bad faith or callous disregard" standard.

RPI asks the Court en banc to strike all merits-preclusive deemed admissions and to affirm the non-merits-preclusive deemed admissions.

RPI admit that Deemed Admissions numbers 1,2,3,4,5,8,9,14,15, and 16 are merits-preclusive. RPI believe that deemed admissions numbers 6,7,10,11,12 and 13 are *not* merits preclusive. However, RPI recognize that deemed admissions numbers 10,12,13 might be found by the Court to be merits preclusive. RPI ask the Court to reinstate and reform the trial court's Order dated July 7, 2015 by striking deemed admissions numbers 1,2,3,4,5,8,9,14,15,16 together with any and all of deemed admissions numbers 10,12,13 which the Court finds to be merits-preclusive; and maintaining deemed admissions numbers 6,7,11 and any and all of deemed admissions numbers 10,12,13 which the Court finds to be non-merits-preclusive.

The Court, in its original opinion in this case, held that deemed admissions 2 and 4 are merits preclusive. RPI ask the Court to strike deemed admissions 2 and 4. The Court further held that because there was no showing that the admissions numbers 6,7,10,11,12,13 were non-merits-preclusive, the Court had to presume that such admissions *were* merits-preclusive, and, thus, that due process concerns were implicated such that the legal standard for "good cause" to withdraw said deemed admissions was not the absence of "conscious indifference" but the lower legal standard of the absence of "flagrant bad faith or callous disregard for the rules."

RPI ask the Court to grant a reconsideration en banc to consider more closely the non-merits-

preclusive nature of deemed admissions numbers 6,7,10,11,12,13.

RPI believe that Deemed Admission 6 is a non-merits-preclusive admission: "That you suggested to your brother Truitt Sewell, that the two of you get Velma Ruth Fitzgerald to change her will to benefit the two of you." Such an admission is a discrete fact, indirectly probative of the material issue of "intent." The deemed admission does nothing to prevent Sewell from testifying that he didn't really mean it, or that he changed his mind, or from freely testifying as to his own intentions. Nor does it prevent him from offering evidence of specific occasions on which he had opportunity to take advantage of the decedent, but chose not to. RPI know of no theoretical evidence, and assert that there is none, which in concert with the deemed admission, would work to limit Sewell from freely testifying as to his own intentions or from offering evidence of specific occasions on which he chose not to take advantage of the decedent. Therefore, Deemed Admission 6 is not merits-preclusive.

RPI believe that Deemed Admission 7 is a non-merits-preclusive admission: "That you told the White brothers in Vernon that Velma Ruth Fitzgerald was not competent when she signed their lease contract." Such an admission is a discrete fact, indirectly probative of the material issue of "testamentary capacity." The deemed admission does nothing to prevent Sewell from putting on evidence of testamentary capacity either generally or at the time of her execution of the will. RPI know of no theoretical evidence, and assert that there is none, which in concert with the deemed admission, would work to prevent Sewell from freely putting on evidence of testamentary capacity. Therefore, Deemed Admission 7 is not merits-preclusive.

RPI believe that Deemed Admission 10 is a non-merits-preclusive admission: "That you misrepresented the nature of Velma Ruth Fitzgerald's mental independence to Ray Johnson and his staff." Such an admission is a discrete fact, indirectly probative of the material issue of "testamentary capacity" and "undue influence." The deemed admission does nothing to prevent Sewell from putting on evidence of testamentary capacity either generally or at the time of her execution of the will. The

3

deemed admission also does nothing to prevent Sewell from putting on evidence of the absence of undue influence, either generally or at the time of her execution of the will. RPI know of no theoretical evidence, and assert that there is none, which in concert with the deemed admission, would work to prevent Sewell from freely putting on evidence of testamentary capacity and the absence of undue influence. Therefore, Deemed Admission 10 is not merits-preclusive. However, if this Court finds Deemed Admission 10 to be merits-preclusive, RPI request that the Court strike Deemed Admission 10.

RPI believe that Deemed Admission 11 is a non-merits-preclusive admission: "That you had no contact with Velma Ruth Fitzgerald for years prior to accompanying Truitt and Laura Sewell to Dallas to visit her in a nursing home." Such an admission is a discrete fact, indirectly probative of the material issue of "intent." The deemed admission does nothing to prevent Sewell from freely testifying as to his own intentions. Nor does it prevent him from offering evidence of specific occasions on which he had opportunity to take advantage of the decedent, but chose not to. RPI know of no theoretical evidence, and assert that there is none, which in concert with the deemed admission, would work to limit Sewell from freely testifying as to his own intentions or from offering evidence of specific occasions on which he chose not to take advantage of the decedent. Therefore, Deemed Admission 11 is not merits-preclusive.

RPI believe that Deemed Admission 12 is a non-merits-preclusive admission: "That you prevented Velma Ruth Fitzgerald from having telephone contact with her lifelong friend, Eunice Lee White." Such an admission is an aspect of control by Sewell. However, this fact does nothing to prevent Sewell from showing that control of one's phone calls does not arise to the level of control that subverts and overpowers the mind. Additionally, such an admission does not prevent Sewell from putting on evidence that he did not exercise control over the decedent at the time she signed the will naming him as sole beneficiary. RPI know of no theoretical evidence, and assert that there is none, which in concert with the deemed admission, would work to limit Sewell from putting on evidence that

4

he did not exercise control over the decedent at the time she signed the will or that he did not exert such control as to rise to the level of subverting and overpowering Fitzgerald's mind. Therefore, Deemed Admission 12 is not merits-preclusive. However, if this Court finds Deemed Admission 12 to be merits-preclusive, RPI request that the Court strike Deemed Admission 12.

RPI believe that Deemed Admission 13 is a non-merits-preclusive admission: "That you habitually subjected Velma Ruth Fitzgerald to your control during the last year of her life." Such admission is probative of control. However, there are degrees of control that do not arise to the level of undue influence – i.e., to the level of subverting and overpowering the mind. And, the word "habitually" does not mean "in every instance;" therefore, the deemed admission does not prevent Sewell from putting on evidence that, at the time the decedent signed the will, he was not subjecting the decedent to his control. RPI know of no theoretical evidence, and assert that there is none, which in concert with the deemed admission, would work to limit Sewell from putting on evidence that he did not exercise control over the decedent at the time she signed the will. Therefore, Deemed Admission 13 is not merits-preclusive. However, if this Court finds Deemed Admission 13 to be merits-preclusive, RPI request that the Court strike Deemed Admission 13.

PRAYER

Therefore, RPI pray the Court to grant RPI a reconsideration en banc in this case and, upon reconsideration, to strike deemed admissions 1,2,3,4,5,8,9,14,15,16, and, to the extent merits-preclusive, deemed admissions 10, 12, and/or 13; to hold that deemed admissions 6,7,10,11,12,13 are non-merits-preclusive admissions; that, therefore, the trial court used the correct legal standard in determining that, because Sewell acted with "conscious indifference" in failing to timely answer the Request For Admissions, Sewell's motion to withdraw the deemed admissions should be denied as to deemed admissions 6,7,11, and to the extent not merits-preclusive, admissions 10,12 and/or 13; thus, RPI pray the Court to reinstate and reform the trial court's July 7, 2015 Order (attached hereto as

5

Exhibit B) to reflect that admissions 1,2,3,4,5,8,9,14,15,16, and, to the extent merits-preclusive, admissions 10, 12 and/or 13, are withdrawn and made of no effect; and, that the withdrawal of deemed admissions by Carlton Sewell as to admissions 6, 7, 11 and, to the extent not merits-preclusive, admissions 10, 12 and/or 13, is denied; and for such other relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

Chad Cable
State Bar No. 03575300
323 Gilmer Street
Sulphur Springs, Texas 75482
(903) 885-1500 Telephone
(903) 885-7501 Telecopier

ATTORNEY FOR CONTESTANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the _16_ day of September, 2015, a true and correct copy was served on to Brad McCampbell, P.O. Box 38, Emory, Texas 75440, FAX (903) 473-3069, attorney of record or party in accordance with the Texas Rules of Civil Procedure.

Chad Cable

6

No. 06-15-00032-CV

In the Court of Appeals

Sixth Judicial District

Texarkana, Texas

*In re* CARLTON SEWELL, Relator

Original Proceeding from the County Court at Law of Hopkins County, Texas

PETITION FOR WRIT OF MANDAMUS

REAL PARTIES IN INTEREST'S RESPONSE
TO RELATOR'S PETITION FOR WRIT OF MANDAMUS

Chad Cable
State Bar No. 03575300
323 Gilmer Street
Sulphur Springs, Texas 75482
(903) 885-1500 Telephone
(903) 885-7501 Telecopier

ATTORNEY FOR CONTESTANTS

1

## Table of Contents

INDEX OF AUTHORITIES............................................................2

STATEMENT OF THE CASE......................................................3

STATEMENT OF FACTS............................................................3

ARGUMENT AND AUTHORITIES..............................................3

PRAYER....................................................................................11

CERTIFICATE OF SERVICE...................................................12

## Index of Authorities

**CASES**                                                                 **PAGE**

*Berlanga v. Berlanga*, 2012 WL 252497 (Tex. App. - Beaumont 2012, no pet.)......................5

*Boulet v. State*, 189 S.W.3d 833 (Tex. App. - Houston [1st Dist.] 2006, no pet.)......................11

*Hewitt v. Roberts*, 2013 WL 398940 (Tex.App.-Corpus Christi 2013, no pet.).........................3

*Johnson v. Edmonds*, 712 S.W.2d 651 (Tex.App.-Fort Worth 1986, no writ)...........................5

*Jones v. Citibank (South Dakota), N.A.*, 235 S.W.3d 333 (Tex.App. – Fort Worth 2007).........4

*Marino v. King* 355 S.W.3d 629 (Tex.2011)...............................................................................3, 9

*Morgan v. Timmers Chevrolet, Inc.*, 1 S.W.3d 803
    (Tex.App.- Houston [1st Dist] 1999, pet. denied)............................................................10

*Steffan v. Steffan*, 29 S.W.3d 627 (Tex. App. - Houston [14th Dist.] 2000, pet. denied)..............4, 5

*Stelly v. Papania*, 927 S.W.2d 620 (Tex.1996)................................................................6

*Vann v. Gaines*, 2007 WL 865870, *2 (Tex.App.-Fort Worth 2007, no pet.)............................4, 5

*Webb v. Ray*, 944 S.W.2d 458, 461 (Tex.App.-Houston [14th Dist.] 1997, no writ)..................4, 6

*Wheeler v. Green*, 157 S.W.3d 439 (Tex.2005)........................................................................5, 6

**RULES**

TEX.R.CIV.P. 198.3.............................................................................................................6, 7

## *Statement of the Case*

Real Parties in Interest accept as accurate Carlton Sewell's Statement of the Case.

## *Statement of Facts*

Real Parties in Interest accept Carlton Sewell's Statement of Facts as accurate except as to the discovery period. The parties, by their conduct and tacit agreement, perpetuated the discovery period by conducting discovery after the date of the Requests for Admission: i.e., Requests for Disclosure; Interrogatories; Requests For Production; and, additional depositions. (Carlton Sewell's Mandamus Record, Vol. 1, Tab 21 and 23).

## *Arguments and Authorities*

### Carlton Sewell Fails to Establish "Good Cause"

A person moving for withdrawal of deemed admissions bears the burden of establishing 1) good cause; and, 2) the absence of undue prejudice. *Hewitt v. Roberts*, 2013 WL 398940, *2 (Tex.App.-Corpus Christi 2013, no pet.).

Good cause exists where the failure to respond to the request for admissions was the result of an accident or mistake and was not intentional or the result of conscious indifference. *Marino v. King* 355 S.W.3d 629, 633 (Tex.2011).

Carlton Sewell's stark failure in this case is his failure to establish "good cause." Carlton Sewell appears to rely exclusively on the fact that he was a *pro se* litigant as being, *ipso facto*, sufficient to establish "good cause." His status as a *pro se* litigant is not, *ipso facto*, sufficient to establish "good cause."

Two cases from the Fort Worth Court of Appeals make it plain that *"pro se"* status is not sufficient to establish "good cause."

3

In the case *Vann v. Gaines*, 2007 WL 865870, *2 (Tex.App.-Fort Worth 2007, no pet.) the court noted that, unlike the appellant in *Wheeler*, the appellant in *Gaines* had not moved to withdraw the admissions, but went on to state that,

> In any event, while a lack of understanding of pre-trial procedure by a pro se litigant might be proof of good cause to withdraw deemed admissions, a conscious indifference is not. Here, appellant was given two separate requests for admissions by appellees... Appellant ignored both requests...Unlike the pro se litigant in *Wheeler*, appellant showed no good cause for not attempting to respond earlier.

Again, in *Jones v. Citibank (South Dakota), N.A.*, 235 S.W.3d 333 (Tex.App. – Fort Worth 2007), the Fort Worth Court of Appeals stated:

> In any event, while a lack of understanding of pre-trial procedure by a pro se litigant might be proof of good cause to withdraw deemed admissions, a conscious indifference is not. Here, unlike the pro se litigant in *Wheeler*, appellant complied with the discovery rules by responding timely to the first request for admissions, but she showed no good cause for failing to even attempt to respond on time to the second request for admissions. *Id.*

It is Carlton Sewell's burden to establish "good cause." *Webb v. Ray*, 944 S.W.2d 458, 461 (Tex.App.-Houston [14th Dist.] 1997, no writ). In the instant case, Carlton Sewell fails to establish that his failure to respond was due to accident or mistake and was not the result of conscious indifference.

First of all, on the face of the Admissions Request, Carlton Sewell was notified of the consequences of a failure to answer. On the face of the Contestants' First Request For Admissions it states, "A failure to specifically answer any request or an evasive answer to any request will be taken as an admission of truth of such request." If Carlton Sewell read this admonition and then decided not to answer, such decision would amount to conscious indifference.

The case of *Steffen v. Steffen*, 29 S.W.3d 627, 631 (Tex. App. - Houston [14th Dist.] 2000, pet. denied) is remarkably similar to the instant case. In *Steffan*, husband was acting pro se when he received a Request For Admissions. Husband did not respond to the request.

4

Here, Richard states that he showed "good cause" because he was a *pro se* litigant at the time the requests were served on him, and he did not know or understand the consequences of failing to timely answer. However, we note that a *pro se* litigant must comply with the applicable laws and rules of procedure. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex.1978). Moreover, the requests for admission had the legal consequences of non-compliance written on their face. Richard has not shown that his alleged ignorance of the law rendered his non-compliance an accident or a mistake, rather than intentional or the result of conscious indifference. We find no abuse of discretion by the trial court in denying Richard's request to withdraw the deemed admissions, and overrule the second issue.

*Steffan v. Steffan*, 29 S.W.3d 627, 631 (Tex. App. - Houston [14th Dist.] 2000, pet. denied).

Carlton Sewell can find no footing in the case of <u>Wheeler v. Green, 157 S.W.3d 439, 443</u> <u>(Tex.2005)</u>(per curiam). In that case, a *pro se* litigant tried to comply with the rules relating to requests for admissions, but because she was unfamiliar with the mail box rule, she served her responses 2 days late. There is clearly nothing in that case showing any conscious indifference. In *Wheeler*, the result would likely have been different if the mailbox rule had been stated on the face of the Admissions Request document.

On the other hand, if Carlton Sewell decided not to read the document, that would also amount to a conscious indifference. A decision not to read the document cannot be excused by the lack of legal knowledge. A person would know that the document was significant by the fact that it was sent certified mail, return receipt requested. Whether a *pro se* litigant or a seasoned attorney, a decision not to read a document is a decision to ignore it. A decision to ignore it is conscious indifference. See *Gaines*, 2007 WL 865870 at *2.

"Conscious indifference has been defined as failing to take some action which would seem obvious to a person of reasonable sensibilities under the same circumstances." *Berlanga v. Berlanga*, No. 09-11-00082-CV, 2012 WL 252497, at *4 (Tex. App. - Beaumont 2012, no pet.)(quoting *Johnson v. Edmonds*, 712 S.W.2d 651, 653 (Tex.App.-Fort Worth 1986, no writ)). It would seem obvious to a person of reasonable sensibilities to read a document that has been sent certified mail. Upon reading

5

such a document as is present in the instant case, it would seem obvious to a person of reasonable sensibilities to respond to the Requests for Admission. Therefore, Carlton Sewell acted with conscious indifference in failing to respond to the Requests for Admission.

In view of the discovery propounded by Carlton Sewell while he was acting pro se, it is apparent that he had some degree of legal sophistication. See Interrogatories and Request For Production dated June 7, 2010. (See Exhibit "A").

Furthermore, the trial court found that Carlton Sewell had acted with "conscious indifference." (See Exhibit "B"). Therefore, Carlton Sewell failed to establish "good cause" necessary to withdraw deemed admissions. The party seeking withdrawal of deemed admissions has the burden to establish good cause. *Webb v. Ray*, 944 S.W.2d 458, 461 (Tex.App.-Houston [14th Dist.] 1997, no writ). A trial court has broad discretion to permit or deny the withdrawal of admissions. *See Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex.1996). The judgment of the trial court should be set aside only if this Court finds that the trial court's judgment amounts to a clear abuse of discretion.

## Dichotomy Between Merits-Preclusive and Non-Merits-Preclusive Admissions

Significant is the interplay between the showing of "good cause" and the due process standard of "flagrant bad faith or callous disregard of the discovery rules." The "good cause" standard applies to whether the deemed admissions can be withdrawn under Rule 198.3. To establish "good cause," the admitting party must establish that the failure to respond was the result of accident or mistake, not intentional or the result of conscious indifference. *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005) The due process standard applies to prevent the proponent of the deemed admissions from using the deemed admissions in a merits-preclusive manner. Thus, if the Carlton Sewell fails to establish "good cause" then the admissions *cannot* be withdrawn under Rule 198.3. At the same time, the merits-preclusive deemed admissions cannot be *used* absent evidence of "flagrant bad faith or callous

6

disregard." However, if the admitting party fails to establish "good cause," such that the deemed admissions cannot be withdrawn under Rule 198.3, the non-merits-preclusive deemed admissions can be freely used by the proponent without implicating due process concerns or the "flagrant bad faith or callous disregard" standard. Therefore, it is important to know which admissions are non-merits-preclusive such that they may be freely used without implicating due process concerns.

Below, find a list of the deemed admissions in this case and a statement as to whether each admission is merits-preclusive, and thus cannot be used absent "flagrant bad faith or callous disregard" or non-merits-preclusive, and thus may be freely used without implicating due process concerns.

1. That you exercised undue influence over Velma Ruth Fitzgerald to induce her to change her will. **Merits-Preclusive.**

2. That throughout the spring and summer of 2007, Velma Ruth Fitzgerald was physically and mentally weak enough to be susceptible to undue influence. **Merits-Preclusive**.

3. That you influenced Velma Ruth Fitzgerald to the point of subverting and overpowering her mind so that she would execute a new will naming you as sole beneficiary which she would not have done absent your influence. **Merits-Preclusive.**

4. That you engaged in a campaign to keep other relatives of Velma Ruth Fitzgerald from having contact with her as part of your scheme to exert undue influence over her. **Merits-Preclusive.**

5. That one of your techniques for exerting undue influence was to feign romantic love for Velma Ruth Fitzgerald in a seducing manner by physical affection and full on the mouth kissing. **Merits-Preclusive.**

6. That you suggested to your brother Truitt Sewell, that the two of you get Velma Ruth Fitzgerald to change her will to benefit the two of you. **Non-merits-preclusive.**

7. That you told the White brothers in Vernon that Velma Ruth Fitzgerald was not competent when she signed their lease contract. **Non-Merits-Preclusive.**

7

8. That you converted funds belonging to Velma Ruth Fitzgerald to your own benefit prior to her death. **Non-Merits-Preclusive.**

9. That you breached your fiduciary duty to Velma Ruth Fitzgerald by profiting from the use of her power of attorney prior to her death. **Non-Merits-Preclusive.**

10. That you misrepresented the nature of Velma Ruth Fitzgerald's mental independence to Ray Johnson and his staff. **Non-Merits-Preclusive.**

11. That you had no contact with Velma Ruth Fitzgerald for years prior to accompanying Truitt and Laura Sewell to Dallas to visit her in a nursing home. **Non-Merits-Preclusive.**

12. That you prevented Velma Ruth Fitzgerald from having telephone contact with her lifelong friend, Eurice Lee White. **Non-Merits-Preclusive.**

13. That you habitually subjected Velma Ruth Fitzgerald to your control during the last year of her life. **Non-Merits-Preclusive.**

14. That Velma Ruth Fitzgerald was mentally and physically incapable of resisting your undue influence by August 2007. **Merits-Preclusive.**

15. That the August 8, 2007 will of Velma Ruth Fitzgerald is invalid and should be set aside. **Merits-Preclusive.**

16. That you are liable for damages and attorney fees to the contestants. **Merits-Preclusive.**

Real Parties in Interest believe that Admission 13 - "That you habitually subjected Velma Ruth Fitzgerald to your control during the last year of her life." is not merits-preclusive because "habitually" does not mean "in every instance," such as at the time of the execution of the will, and because "control" can exist that does not arise to such degree as to "subvert and overpower" the mind, e.g., controlling her visits with others, controlling her phone calls, etc.

Thus, Real Parties in Interest can freely use deemed admissions numbers: 6,7,10,11,12, and 13 without implicating due process concerns, so long as the failure to respond to the requests for

8

admission was the result of conscious indifference. Admissions 8 and 9 are also non-merits-preclusive, but Real Parties in Interest have heretofore withdrawn such admissions in the trial court. (See Exhibit "C").

## Carlton Sewell Fails to Establish Absence of Undue Prejudice

The absence of undue prejudice is established by showing that a withdrawal of deemed admissions will not delay trial nor significantly hamper the opposing party's ability to prepare for trial. *Marino v. King* 355 S.W.3d 629, 633 (Tex.2011).

There is considerable discovery that Real Parties in Interest did not seek to conduct in reliance on the deemed admissions. If not for the deemed admissions, Real Parties in Interest would have sought to depose 1) Tiffany Bassham, who was the administrator of the assisted living facility Carlton Sewell had Mrs. Fitzgerald sequestered in; 2) Alice Davis, who was one of the paid sitters; and, 3) DeeAnn Landers, the bank officer familiar with the unusual facts involving Carlton Sewell's use of the power of attorney, executed by Mrs. Fitzgerald in his favor, to purchase a rural home on several acres with an $80K down payment and a similar sized note with the local bank. (See Exhibit "A", Para. 5) Real Parties in Interest would also seek to obtain the bank records pertaining to that transaction.

Critical to Real Parties in Interest's case is the anticipated testimony of Truitt Sewell, who is one of the Real Parties in Interest and the brother of Carlton Sewell. His anticipated testimony is the most probative evidence in the entire case. He would testify that Carlton Sewell asked him to help Carlton get Fitzgerald to change her will to benefit the two of them. As a strategic matter, it is important to elicit this information by live testimony.

Truitt Sewell became sick with cancer in the Fall of 2014. (See Exhibit "A", Para. 6.). His health has deteriorated to the point that he probably will not have the capacity to testify at trial because of the delay of trial from January 12, 2015, to some undetermined point in the future. Id. Thus, Real

9

Parties in Interest's case is highly prejudiced by the delay of trial.

Additionally, the case of *Morgan v. Timmers Chevrolet, Inc.*, 1 S.W.3d 803, n. 5 (Tex.App.- Houston [1st Dist] 1999) is instructive. There, trial was commenced *more than 2 years after* the requests for admissions were deemed admitted. After trial began, and after 3 witnesses had testified and 10 exhibits had been admitted, plaintiffs sought to introduce the deemed omissions, which caught the defendant unaware, because the deemed admissions were the result of a clerical error by the staff of defendant's attorney, who was ignorant of the mistake until the day of trial. The trial court granted the defendant leave to withdraw the deemed admissions but offered plaintiffs a mistrial in order for plaintiffs to conduct the discovery plaintiffs had not conducted in reliance on the deemed admissions. The plaintiffs refused the mistrial. From an unfavorable result, plaintiffs appealed. The 1st District Court of Appeals reversed, holding that the plaintiffs were unduly prejudiced because there was considerable discovery that plaintiffs did not conduct in reliance on the deemed admissions. The court of appeals also noted that the plaintiffs "were not required to accept a mistrial – plaintiffs were entitled to rely on the guiding rules and principles set out in the Rules of Civil Procedure regarding deemed admissions." *The court of appeals did not blame the plaintiffs, in the least, for waiting over two years, and not until the middle of trial, before asserting the deemed admissions.*

Like the plaintiffs in *Morgan*, the Real Parties in Interest here have substantial discovery which they did not seek to conduct in reliance on the deemed admissions. (See Exhibit "A", Para. 5). Real Parties in Interest here, upon filing their Certificate of Deemed Admissions, "were entitled to rely on the guiding rules and principles set out in the Rules of Civil Procedure regarding deemed admissions." In *Morgan*, the court permitted withdrawal of deemed admissions during the middle of trial. In the instant case, the Court delayed the trial of the case for the purpose of entertaining a motion for withdrawal of deemed admissions. (See Exhibit "A", Para. 7). Delay of trial is a quintessential form of undue prejudice. Twenty cases in Texas substantially state: "Undue prejudice depends on whether

10

withdrawing an admission will *delay trial* or significantly hamper the opposing party's ability to prepare for it." *Boulet v. State*, 189 S.W.3d 833, 836-37 (Tex. App. - Houston [1ˢᵗ Dist.] 2006, no pet.)(emphasis added).

In their reliance on the guiding rules and principles set out in the Rules of Civil Procedure, Real Parties in Interest have been prejudiced by the delay of trial. Therefore, Carlton Sewell has failed to establish an absence of undue prejudice, and the Petition For Writ of Mandamus should be denied.

The fact that Real Parties in Interest had 4½ years to conduct the discovery that was not conducted is immaterial, because the Real Parties in Interest believed that the pertinent propositions of law were established by the deemed admissions.

### Carlton Sewell Waived the Right to Complain of the Untimeliness of Real Parties in Interest's Admissions Request

By engaging in substantial discovery after Real Parties in Interest's Request for Admissions, Carlton Sewell cannot complain of the untimeliness of Real Parties in Interest's Request for Admissions. The Request for Admissions was served on May 13, 2010. Subsequent to that time, the parties continued to engage in discovery, i.e., Requests for Disclosure, Interrogatories, Requests for Production and additional depositions. (Carlton Sewell's Mandamus Record, Vol. 1, Tab 21 and 23). By their conduct and tacit agreement, the parties perpetuated the discovery period.

### PRAYER

For the foregoing reasons, Real Parties In Interest pray the Court to strike those admissions having merits-preclusive effect, Admissions numbers 1,2,3,4,5,14,15,16; strike those admissions that were withdrawn in the trial court, Admissions 8 and 9; and affirm those admissions having non-merits-preclusive effect, Admissions numbers 6,7,10,11.12,13; deny Carlton Sewell's Petition For Writ of Mandamus, and for such other relief, at law or in equity, to which they may be justly entitled.

11

Respectfully submitted,

Chad Cable
State Bar No. 03575300
323 Gilmer Street
Sulphur Springs, Texas 75482
(903) 885-1500 Telephone
(903) 885-7501 Telecopier

ATTORNEY FOR CONTESTANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of July, 2015, a true and correct copy was served on to Brad McCampbell, P.O. Box 38, Emory, Texas 75440, FAX (903) 473-3069, attorney of record or party in accordance with the Texas Rules of Civil Procedure.

Chad Cable

12

Exhibit "A"

No. 06-15-00032-CV

## In the Court of Appeals

## Sixth Judicial District

## Texarkana, Texas

## *In re* CARLTON SEWELL, Relator

## Original Proceeding from the County Court at Law of Hopkins County, Texas

## PETITION FOR WRIT OF MANDAMUS

## AFFIDAVIT OF CHAD CABLE

STATE OF TEXAS      \*

                         \*

COUNTY OF HOPKINS      \*

BEFORE ME, the undersigned authority, personally appeared Chad Cable, who, upon oath or solemn affirmation, deposed as follows:

1. My name is Chad Cable. I am over the age of eighteen and am, in all respects, competent to make this affidavit. The matters stated herein are within my personal knowledge and are true and correct.

2. I am an attorney licensed to practice law in the State of Texas. I have practiced law in Hopkins County for the past 35 years. I represent the Real Parties in Interest in the above styled and numbered case,

3. Acting as attorney for the Real Parties in Interest, I served on Carlton Sewell ("Carlton") Requests for Admissions dated May 13, 2010. Attached as Exhibit A is the green card establishing that Carlton received the document on May 17, 2010. Carlton failed to respond to such Request for Admissions. Therefore, according to Texas Rules of Civil Procedure, Rule 198.2(c), the matters are deemed admitted without the necessity of a court order.

4. Since serving the Requests for Admissions, Carlton, while acting *pro se*, has served on me a Set of Written Interrogatories (June 7, 2010) a true and correct copy of which is attached to this affidavit as Exhibit B; and, a Request For Production (June 7, 2010) a true and correct copy of which is attached to this affidavit as Exhibit C.

5. In reliance on the deemed admissions, I did not seek to depose 1) Tiffany Bassham, head

administrator of the assisted living center in which Velma Ruth Fitzgerald was sequestered by Carlton; 2) Alice Davis, the paid sitter of Velma Ruth Fitzgerald; and 3) DeeAnn Landers, the bank officer involved in Carlton's purchase of a rural home on several acres for a down payment of $80,000.00, together with a like amount borrowed through the bank, which Carlton purchased under the power of attorney executed in his favor by Velma Ruth Fitzgerald.

6. Truitt Sewell was diagnosed with cancer in the Fall of 2014. His health has rapidly deteriorated since that time to the extent that Truitt Sewell is likely incapacitated to such an extent that he will not be able to testify at trial.

7. On January 12, 2015, the day of trial, I filed a Certificate of Deemed Admissions. At Carlton Sewell's request, the Court delayed the trial for the purpose of entertaining a motion to withdraw the deemed admissions.

8. FURTHER AFFIANT SAYETH NOT.

_____
CHAD CABLE

SWORN TO, or solemnly affirmed, before me, the undersigned authority, on this the ___16___ day of July, 2015.

_____
Notary Public, State of Texas

Linda Ann Rascoe
My Commission Expires
07/23/2016

UNITED STATES POSTAL SERVICE

First Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Law Offices of Chad Cable
323 Gilmer
Sulphur Springs, TX 75482

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Carlton Sewell
107 Morris Drive
Sulphur Springs, Texas 75482

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
                                   5/17/10

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)
   7005 1820 0007 7656 6578

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

CARLTON SEWELL
6940 TX Hwy. 11 E.
Sulphur Springs, TX 75482

June 7, 2010

Chad Cable
323 Gilmer St.
Sulphur Springs, TX 75482

      Re:   1.    Request for Production
              2.    Interrogatories

              No. P08-13106; *In the Estate of Velma Ruth Fitzgerald, Deceased;* in the County Court of Hopkins County, Texas

Dear Mr. Cable:

      Enclosed please find Request for Production and Interrogatories to Janet Neal Stanley and Truitt Sewell.

Sincerely,

Carlton Sewell

Encs.

No. P08-13106

| IN THE ESTATE OF | § | IN THE COUNTY COURT |
|---|---|---|
| VELMA RUTH FITZGERALD, | §§§ | OF |
| DECEASED | §§ | HOPKINS COUNTY, TEXAS |

## INTERROGATORIES TO JANET NEAL STANLEY AND TRUIT SEWELL

TO:     JANET NEAL STANLEY AND TRUIT SEWELL, by and through Chad Cable, 323 Gilmer St., Sulphur Springs, TX 75482:

COMES NOW, Carlton Sewell, "Defendant", and pursuant to Rule 197 of the Texas Rules of Civil Procedure, serves the attached interrogatories to be propounded to Janet Neal Stanley and Truitt Sewell, Proponents.

Pursuant to the provisions of Rules 192 and 197 of the Texas Rules of Civil Procedure, you are required to complete written answers to the Interrogatories on Exhibit "A" to this pleading immediately upon the expiration of thirty (30) days following the date you are served with these Interrogatories. You are notified that the Defendant specifies that the answers shall be served upon the undersigned counsel.

Your failure to make timely answers or objections may subject you to sanctions as provided in Rule 215 of the Texas Rules of Civil Procedure.

Furthermore, demand is made for the supplementation of your answers to these Interrogatories as required by Rule 193.5 of the Texas Rules of Civil Procedure.

Respectfully submitted,

_____
Carlton Sewell, Defendant
6940 TX Hwy. 11 E.
Sulphur Springs, TX 75482
903.335.0145

## CERTIFICATE OF SERVICE

I certify that on _____, 2010, a true and correct copy of Interrogatories to Janet Neal Stanley and Truitt Sewell was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure via hand delivery:

Chad Cable, 323 Gilmer Avenue, Sulphur Springs, TX 75482.

_____
Carlton Sewell

# DEFINITIONS AND INSTRUCTIONS

1.      As used herein, the terms "you" and "your" shall mean the Proponents, Janet Neal Stanley and/or Truitt Sewell, their attorneys, agents and all other natural persons or business or legal entities acting or purporting to act for or on behalf of Proponents, whether authorized to do so or not.

2.      As used herein, the term "documents" shall mean all writings of every kind, source and authorship, both originals and nonidentical copies thereof, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation, any governmental agency, department, administrative or private entity or person. The term shall include handwritten, typewritten, printed, photocopies, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits, agendas, agreements, analyses, announcements, bills, statements, and other records of obligations and expenditures, books, brochures, bulletins, calendars, canceled checks, vouchers, receipts and other records of payments, charts, drawings; check registers, checkbooks, circulars, collateral files and contents, contacts, corporate bylaws, corporate charters, correspondence, credit files and contents, deeds of trust, deposit slips, diaries, drafts, files, guaranty agreements, instructions, invoices, ledgers, journals, balance sheets, profits and loss statements, and other sources of financial data; letters, logs, notes or memoranda of telephonic or face-to-face conversations, manuals, memoranda of all kinds, to and from any persons, agencies, or entities; minutes, minute books, notes, notices, parts lists, papers, press releases, printed matter (including books, articles, speeches, and newspaper clippings), purchase orders, records, records of administrative, technical and financial actions taken or recommended; reports, safety deposit boxes and contents and records of entry, schedules, security agreements, specifications, statement of bank accounts, statements, interviews, stock transfer ledger, technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results and conclusions, summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations, telegrams, teletypes and other communications sent or received, transcripts of testimony, UCC instruments, work papers, and all other writings, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

In accordance with Tex.R.Civ.P § 102.7, a document is deemed to be in your possession, custody or control if you have either actual physical possession of a document or constructive possession of the document. Constructive possession means that you have a superior right to compel the production of such document or a copy thereof from a third party having actual physical possession of the document.

3.      "Decedent" means Velma Ruth Fitzgerald.

4.      "Person" or "persons" means any natural persons, firms, partnerships, associations, joint ventures, corporations and any other form of business organization or arrangement, as well as governmental or quasi-governmental agencies. If other than a natural person, include all natural persons associated with such entity.

## USE OF DEFINITIONS

The use of any particular gender in the plural or singular number of the words defined under

paragraph "1", "Definitions" is intended to include the appropriate gender or number as the text of any particular discovery may require.

## TIME PERIOD

Unless specifically stated herein, all information herein requested is for the time period from January 1, 2007 through the date of the documentation responding hereto. However, if information clarifies the estate, please detail such documentation.

## DESCRIPTION OF WITHHELD MATERIAL OR INFORMATION

Pursuant to rule 192.2(b), Tex.R.Civ.P., if you have withheld any material or information from production, then within 18 days after service upon Defendant's counsel of your Answers to Interrogatories, please file a response that:

a.  Describes the information or materials withheld that, without revealing the privileged information itself or otherwise waving the privilege, enables other parties to assess the applicability of the privilege; and

b.  Asserts a specific privilege for each item or group of items withheld.

## INTERROGATORIES

**Interrogatory No. 1:** Please identify each person (by name, address and telephone number) answering these Interrogatories, supplying information or assisting in any way with the preparation of the answers to these Interrogatories.

ANSWER:

**Interrogatory No. 2:** Pursuant to Tex.R.Civ.P. 192.3(d), please identify by name, address and telephone number any person who has knowledge of facts relevant to this lawsuit and provide a brief statement of the relevant facts attributable to each such person.

ANSWER:

**Interrogatory No. 3:** Pursuant to Tex.R.Civ.P. 192.3(c), please identify by name, address and telephone number all experts whom you have retained for consultation whose work product forms the basis either in whole or in part of the opinions of an expert who is to be called as a witness.

ANSWER:

**Interrogatory No. 4:** Please identify all documents consulted, examined or referred to in the preparation of the answers to these interrogatories.

ANSWER:

**Interrogatory No. 5:** Please identify all of the legal contentions and factual basis for your contentions that the will dated August 8, 2007, should not have been admitted to probate and should be aside, without limited to, your contentions that Decedent lacked testamentary capacity or that Carlton Sewell exercised undue influence over Decedent.

ANSWER:

**Interrogatory No. 6:** Please state the name, telephone number, and address of persons having relevant knowledge of the mental and physical condition of Decedent, including, but not limited to, physicians, medical and other healthcare providers, of Velma Ruth Fitzgerald during the period of time beginning January 1, 2007 through the date of her death her death on December 31st, 2007.

ANSWER:

**Interrogatory No. 7:** Please state the name, address and telephone number of each and every hospital, clinic, out-patient facility or other healthcare provider which provided Decedent care or advice or provided advise beginning January 1, 2007 through the date of Decedent's death December 31st, 2007.

ANSWER:

**Interrogatory No. 8:** Please identify all of the legal contentions and factual basis for your

contentions that the Will dated April 26, 1993, propounded by Defendant, was not revoked by Decedent.

ANSWER:

No. P08-13106

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT |
| | § | |
| VELMA RUTH FITZGERALD, | § | OF |
| | § | |
| DECEASED | § | HOPKINS COUNTY, TEXAS |

## REQUEST FOR PRODUCTION

TO: **JANET NEAL STANLEY and TRUITT SEWELL, by and through attorney of record, Chad Cable, 323 Gilmer St., Sulphur Springs, TX 75482:**

NOW COMES CARLTON SEWELL, Defendant, and pursuant to Rule 192 and 196 of the Texas Rules of Civil Procedure, requests Janet Neal Stanley and Truitt Sewell to produce and permit the inspection and copying of items requested in Exhibit "A" at 6940 TX Hwy. 11 E., Sulphur Springs, TX 75482, immediately upon the expiration of thirty (30) days following the date you are served with this set of requests for production.

If a document requested hereunder has already been produced, in response to a previous request for production, subpoena, or order in this litigation, it need not be produced again. However, any such documents previously produced should be identified by date, description and paragraph herein to which the documents are relevant.

Respectfully submitted,

_____

Carlton Sewell, Defendant
6940 TX Hwy. 11 E.
Sulphur Sprigns, TX 75482
903.335.0145

Request for Production

## CERTIFICATE OF SERVICE

I certify that on _____, 2010, a true and correct copy of Request for Production was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure via hand delivery:

Chad Cable, 323 Gilmer Avenue, Sulphur Springs, TX 75482.


_____

Carlton Sewell

## DEFINITIONS AND INSTRUCTIONS

1.      As used herein, the terms "you" and "your" shall mean the Proponents, Janet Neal Stanley and Truitt Sewell, their attorneys, agents and all other natural persons or business or legal entities acting or purporting to act for or on behalf of Proponents, whether authorized to do so or not.

2.      As used herein, the term "documents" shall mean all writings of every kind, source and authorship, both originals and nonidentical copies thereof, in your possession, custody or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation, any governmental agency, department, administrative or private entity or person.  The term shall include handwritten, typewritten, printed, photocopies, photographic, or recorded matter.  It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.  For purposes of illustration and not limitation, the term shall include: affidavits, agendas, agreements, analyses, announcements, bills, statements, and other records of obligations and expenditures, books, brochures, bulletins, calendars, canceled checks, vouchers, receipts and other records of payments, charts, drawings; check registers, checkbooks, circulars, collateral files and contents, contacts, corporate bylaws, corporate charters, correspondence, credit files and contents, deeds of trust, deposit slips, diaries, drafts, files, guaranty agreements, instructions, invoices, ledgers, journals, balance sheets, profits and loss statements, and other sources of financial data; letters, logs, notes or memoranda of telephonic or face-to-face conversations, manuals, memoranda of all kinds, to and from any persons, agencies, or entities; minutes, minute books, notes, notices, parts lists, papers, press releases, printed matter (including books, articles, speeches, and newspaper clippings), purchase orders, records, records of administrative, technical and financial actions taken or recommended; reports, safety deposit boxes and contents and records of entry, schedules, security agreements, specifications, statement of bank accounts, statements, interviews, stock transfer ledger, technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results and conclusions, summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations, telegrams, teletypes and other communications sent or received, transcripts of testimony, UCC instruments, work papers, and all other writings, the contents of which relate to, discuss, consider or otherwise refer to the subject matter of the particular discovery requested.

In accordance with Tex.R.Civ.P § 102.7, a document is deemed to be in your possession, custody or control if you have either actual physical possession of a document or constructive possession of the document.  Constructive possession means that you have a superior right to compel the production of such document or a copy thereof from a third party

having actual physical possession of the document.

3. "Decedent" means Velma Ruth Fitzgerald.

4. "Person" or "persons" means any natural persons, firms, partnerships, associations, joint ventures, corporations and any other form of business organization or arrangement, as well as governmental or quasi-governmental agencies. If other than a natural person, include all natural persons associated with such entity.

## USE OF DEFINITIONS

The use of any particular gender in the plural or singular number of the words defined under paragraph "1", "Definitions" is intended to include the appropriate gender or number as the text of any particular discovery may require.

## TIME PERIOD

Unless specifically stated herein, all information herein requested is for the time period from January 1, 2007 through the date of the documentation responding hereto. However, if information clarifies the estate, please detail such documentation.

## DESCRIPTION OF WITHHELD MATERIAL OR INFORMATION

Pursuant to rule 192.2(b), Tex.R.Civ.P., if you have withheld any material or information from production, then within 18 days after service upon Contestant's counsel of your Responses to Request for Protection, please file a response that:

a. Describes the information or materials withheld that, without revealing the privileged information itself or otherwise waving the privilege, enables other parties to assess the applicability of the privilege; and

b. Asserts a specific privilege for each item or group of items withheld.

Exhibit "A"
## REQUESTS FOR PRODUCTION

Request for Production No. 1:    Please produce all documents related to this lawsuit given to, obtained, reviewed, or prepared by, (i) each person whom you intend to call as an expert witness in this lawsuit; and (ii) each person used for consultation and who is not expected to be called as a witness at trial if (a) the consulting expert's work product forms a basis either in whole or in part of the opinions of an expert who is to be called as a witness, or (b) the consulting expert's report or work product is reviewed by or received by the expert who is to testify in this case.

RESPONSE:

Request for Production No. 2:    Please produce all documents which relate, directly or indirectly, to the physical and/or mental condition of Decedent, Velma Ruth Fitzgerald, during the period beginning January 1, 2007 through her death on December 31, 2007.

RESPONSE:

Request for Production No. 3:    Please produce any witness statement(s) obtained by Proponent to date.

RESPONSE:

Request for Production No. 4:    Please produce any and all documents which relate, either directly or indirectly, to Proponents' contention that Decedent lacked testamentary capacity on August 8, 2007.

RESPONSE:

Request for Production No. 5:    Please produce all documents which relate, directly or indirectly, to Proponents' contention that Carlton Sewell exercised undue influence over Decedent during the period beginning January 1, 2007, through and including the date of Decedent's death on December 31, 2007.

RESPONSE:

## NO. PO8-13106

| | | |
|---|---|---|
| IN THE ESTATE OF | ) | IN THE COUNTY COURT |
| | ) | |
| VELMA RUTH FITZGERALD | ) | AT LAW OF |
| | ) | |
| DECEASED | ) | HOPKINS COUNTY, TEXAS |

## ORDER ON CONTESTANTS' NOTICE OF WITHDRAWAL
## AND REPUDIATION OF CERTAIN DEEMED ADMISSIONS

The Court acknowledges Contestants' Notice and Repudiation of Certain Deemed Admissions.

The Court ORDERS that Admissions 1, 3, 5, 8, 9, 14, 15, 16 are hereby withdrawn and made of no effect. The Court ORDERS that Contestants' Motion for Summary Judgment is likewise withdrawn and made of no effect. The Court reiterates its prior order that the withdrawal of deemed admissions by Carlton Sewell as to Admissions 2, 4, 6, 7, 10, 11, 12, 13 is denied, the Court finding that Carlton Sewell did not have "good cause" for withdrawal of such Admissions in that he acted with "conscious indifference" in failing to answer the Request for Admissions in this case.

Signed this 7th day of July, 2015.

_____
JUDGE PRESIDING

BY _____ DEPUTY

DEBBIE SHIRLEY
COUNTY CLERK

FILED FOR RECORD
HOPKINS COUNTY, TEXAS
2015 JUL -7 A 9: 18


TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN HOPKINS
COUNTY CLERK'S OFFICE

THE COUNTY OF HOPKINS
STATE OF TEXAS

NO. PO8-13106

FILED FOR RECORD
HOPKINS COUNTY, TEXAS

2015 JUL -6 A 8: 57

DEBBIE SHIRLEY
COUNTY CLERK

BY_____DEPUTY

| | | |
|---|---|---|
| IN THE ESTATE OF | ) | IN THE COUNTY COURT |
| | ) | |
| VELMA RUTH FITZGERALD | ) | AT LAW OF |
| | ) | |
| DECEASED | ) | HOPKINS COUNTY, TEXAS |

## CONTESTANTS' NOTICE OF WITHDRAWAL AND REPUDIATION OF CERTAIN DEEMED ADMISSIONS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW Truitt Sewell and Janet Neal Stanley, Contestants, filing this their Notice of Withdrawal and Repudiation of Certain Deemed Admissions and would respectfully show the Court as follows:

I.

On May 13, 2010, Contestants served on Carlton Sewell Contestants' First Request For Admissions. Carlton Sewell did not timely respond to the request and the admissions were, therefore, deemed to be admitted. On January 12, 2015, Contestants' attorney filed a Certificate of Deemed Admissions, setting forth the admissions that were deemed as a result of Carlton Sewell's failure to timely respond.

Please take notice that Contestants hereby withdraw from the list of "deemed" admissions, Admissions numbers 1, 3, 5, 8, 9, 14, 15 and 16, the admissions which would have had merits-preclusive effect. And, hereby repudiates those deemed admissions and asserts that such admissions will not be used or relied upon in any manner nor in any context, including at the trial of this matter, in any summary judgment proceeding, in any mandamus proceeding, and in any appeal. Contestants also hereby withdraw and repudiate their Motion For Summary Judgment which was filed in this case.



TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN HOPKINS
COUNTY CLERK'S OFFICE

1 | P a g e

Respectfully submitted,

Chad Cable
State Bar No. 03575300
323 Gilmer Street
Sulphur Springs, Texas 75482
(903) 885-1500 Telephone
(903) 885-7501 Telecopier

ATTORNEY FOR CONTESTANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ 6th _____ day of July, 2015, a true and correct copy was served on to Brad McCampbell, P.O. Box 38, Emory, Texas 75440, FAX (903) 473-3069, attorney of record or party in accordance with the Texas Rules of Civil Procedure.

Chad Cable

TRUE AND CORRECT
COPY OF ORIGINAL
FILED IN HOPKINS
COUNTY CLERK'S OFFICE

## NO. PO8-13106

| | | |
|---|---|---|
| **IN THE ESTATE OF** | ) | **IN THE COUNTY COURT** |
| | ) | |
| **VELMA RUTH FITZGERALD** | ) | **AT LAW OF** |
| | ) | |
| **DECEASED** | ) | **HOPKINS COUNTY, TEXAS** |

### ORDER ON CONTESTANTS' NOTICE OF WITHDRAWAL
### AND REPUDIATION OF CERTAIN DEEMED ADMISSIONS

The Court acknowledges Contestants' Notice and Repudiation of Certain Deemed Admissions.

The Court ORDERS that Admissions 1, 3, 5, 8, 9, 14, 15, 16 are hereby withdrawn and made of no effect. The Court ORDERS that Contestants' Motion for Summary Judgment is likewise withdrawn and made of no effect. The Court reiterates its prior order that the withdrawal of deemed admissions by Carlton Sewell as to Admissions 2, 4, 6, 7, 10, 11, 12, 13 is denied, the Court finding that Carlton Sewell did not have "good cause" for withdrawal of such Admissions in that he acted with "conscious indifference" in failing to answer the Request for Admissions in this case.

Signed the 7th day of July. 2015.

_____
**JUDGE PRESIDING**

FILED FOR RECORD
HOPKINS COUNTY, TEXAS
2015 JUL -7 A 9 18
DEBBIE SHIRLEY
COUNTY CLERK
BY_____
DEPUTY