# IN THE SUPREME COURT OF TEXAS

═══════════════

No. 17-0498

═══════════════

CHRISTOPHER MEDINA, PETITIONER

v.

JENNIFER L. ZUNIGA, RESPONDENT

═══════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

═══════════════════════════════════════

**Argued December 4, 2018**

JUSTICE BROWN delivered the opinion of the Court.

JUSTICE BUSBY did not participate in the decision.

In this case we address when, if ever, a trial court may sanction a party who fails to admit negligence during discovery but concedes it at trial. Here, the plaintiff served the defendant with a spate of requests for admissions at the outset of the litigation. In those requests, the plaintiff essentially asked the defendant to concede his negligence in every possible respect and confess he was the sole cause of the accident at issue. The defendant predictably denied those requests. The case proceeded to trial, at which time the defendant made the strategic decision to concede ordinary negligence but contest the plaintiff's gross-negligence claim. After trial, the plaintiff asked the trial court to award sanctions in the form of reasonable expenses and attorney's fees incurred in proving up the negligence issues that the defendant ultimately conceded. The trial court awarded sanctions

and the court of appeals affirmed. We reverse and render judgment that the trial court abused its discretion in awarding sanctions.

In a separate issue, we hold that no evidence supports the jury's finding that the defendant was grossly negligent. Because the court of appeals held otherwise, we reverse and render judgment that the plaintiff take nothing on her gross-negligence claim.

**I**

Christopher Medina drove to his high school on a Sunday to feed livestock in conjunction with the school's agricultural program. The record reflects that students customarily visited the school over the weekend to care for the animals. Surveillance video taken at the time of the accident shows several people coming and going from campus. Jennifer Zuniga drove her daughter to the school for the same reason and went for a jog while her daughter tended to her responsibilities.

Medina turned off a public street and onto an entrance drive to the school's parking lot, where he stopped to talk to two students through his passenger window. Another driver pulled in behind Medina, whose truck blocked the drive, and honked at him. Medina briefly drove his truck in reverse before proceeding forward into the parking lot. Evidence adduced at trial suggested Medina was attempting to "mess with" the other driver—a friend—by creeping his truck toward her in reverse before driving forward.

Medina proceeded forward through the horseshoe-shaped drive, which provided access to a short strip of parking spaces before emptying back onto the same public street by which Medina had arrived. Zuniga's accident reconstructionist testified that Medina accelerated rapidly through the parking lot, reaching a top speed of 24 miles per hour. To reach that speed in such a short

distance, the reconstructionist testified, Medina must have pressed the accelerator almost to the floor.

Medina decreased his speed—Zuniga's reconstructionist suggested 19 miles per hour—as he approached the exit and prepared to turn right onto the public street. At the time, Zuniga was crossing the exit driveway headed toward the sidewalk. There was no stop sign posted at the exit and Medina admitted he did not stop. Medina testified he looked left before exiting but conceded he failed to look right. He saw Zuniga only momentarily before he struck her as he pulled onto the street. The evidence showed that Medina attempted to brake immediately before impact. Photographs taken of the accident scene showed that the right-rear wheel of Medina's truck came to rest on the border between the driveway and sidewalk. Zuniga's expert testified that Medina likely drove on the sidewalk as he turned out of the parking lot.

Zuniga sued Medina for negligence and gross negligence, and his parents for negligent entrustment. During discovery, Zuniga served Medina with requests for admissions pursuant to Rule 198. *See* TEX. R. CIV. P. 198.1 ("A party may serve on another party . . . written requests that the other party admit the truth of any matter within the scope of discovery, including statements of opinion or of fact or of the application of law to fact, or the genuineness of any documents served with the request or otherwise made available for inspection and copying."). The requests at issue in this case, all of which Medina denied, are reproduced below:

> Do you admit or deny that you did not operate the vehicle under proper control at the time of the incident made the basis of this lawsuit?

> Do you admit or deny that the manner of operation of the vehicle you were driving at the time of the accident made the basis of this lawsuit[] increased the hazard to the Plaintiff and others upon the roadway?

3

Do you admit or deny that there was no contributory negligence on the part of the Plaintiff in this collision?

Do you admit or deny the Plaintiff's allegation that your negligence was the proximate cause of the occurrence in question?

Do you admit or deny that you were incompetent and unfit to safely operate a motor vehicle on the public streets, highways and/or public facilities at the time of the accident made the basis of this lawsuit?

Do you admit or deny that you knew, or in the exercise of ordinary care, should have known, that you were an incompetent and unfit driver and would create an unreasonable risk of danger to persons and property on the public streets and highways of San Antonio, Bexar County, Texas at the time of the accident made the subject of this lawsuit?

Do you admit or deny that you were operating your vehicle at a greater rate of speed than was reasonable at the time of the incident made the basis of this lawsuit?

Do you admit or deny you were negligent on the date of the incident made the basis of this lawsuit?

Do you admit or deny that your negligence on the date of the incident was a proximate cause of the Plaintiff's injuries and damages which [are] the subject of this lawsuit?

Do you admit or deny that at the time of the collision made the basis of this lawsuit you failed to yield right of way and therefore were negligent?

Do you admit or deny that at the time of the collision made the basis of this lawsuit you were negligent in failing to make a proper application of your brakes?

Do you admit or deny that at the time of the collision made the basis of this lawsuit you were negligent in failing to turn your vehicle to the left or right to avoid the collision?

The trial court severed Zuniga's claims against Medina from those against his parents.

During opening statement at Medina's trial, his counsel indicated for the first time that Medina would not contest his negligence:

4

"Everyone in this courtroom believes that Ms. Zuniga should be compensated for her injuries as a result of this accident. Nobody is saying she shouldn't be. The reason we are having this trial is because she wants too much money. Not just for the real injuries she sustained in the accident, but also because on top of being compensated for her real injuries in the accident she wants additional money to punish Chris Medina. That's in addition to being compensated for her injuries and her damages. That's why we don't have a choice except to come in here and have this trial."

Our rules provide that "[i]f a party fails to admit the genuineness of any document or the truth of any matter as requested . . . and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney fees." TEX. R. CIV. P. 215.4(b). After trial, Zuniga moved under Rule 215.4 for an award of reasonable expenses and attorney's fees incurred in proving Medina's negligence. The basis Zuniga gave for her sanctions motion was Medina's denial of Zuniga's negligence-based requests for admissions and later concession of ordinary negligence at trial.

Relying on an exception to Rule 215.4's applicability, Medina argued that when he denied Zuniga's requests for admissions, he had a reasonable ground to believe he might ultimately prevail in showing he was not negligent. *See id.* ("The court shall make the order unless it finds that . . . the party failing to admit had a reasonable ground to believe that he might prevail on the matter, or . . . there was other good reason for the failure to admit."). He added that Zuniga was not prejudiced because even if he admitted ordinary negligence in response to Zuniga's requests for admissions, Zuniga would have been required to develop and put on the same evidence to prove her contested gross-negligence claim.

The trial court granted Zuniga's motion. Medina appealed both the trial court's Rule 215.4 order and the legal sufficiency of the jury's finding that he was grossly negligent. The court of

appeals affirmed the trial court's judgment on both issues. 565 S.W.3d 61, 69 (Tex. App.— San Antonio 2017). In reaching its decision, the court of appeals rejected Medina's argument that Zuniga waived any award under Rule 215.4 by waiting until after trial to file her motion. *Id.* at 66–67. Relying on Medina's counsel's opening-statement concession, the court further held the trial court acted within its discretion in awarding reasonable expenses and attorney's fees. *Id.* at 67–68. As to gross negligence, the court of appeals held sufficient evidence supported the jury's findings of an extreme degree of risk and that Medina was subjectively aware of that risk and acted indifferently. *Id.* at 64–65.

We granted Medina's petition for review.

## II

We review a Rule 215 sanctions award for abuse of discretion. *See Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986) (per curiam). "Requests for admission are a tool, not a trapdoor." *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008). They primarily serve "to simplify trials by eliminating matters about which there is no real controversy, but which may be difficult or expensive to prove." *Sanders v. Harder*, 227 S.W.2d 206, 208 (Tex. 1950). When used "as intended," requests for admissions are useful in "addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents." *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005) (per curiam). But, as we have held for almost 70 years, they were "never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense." *Sanders*, 227 S.W.2d at 208; *see also Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) (per curiam) ("Requests for admission were never intended for [the] purpose"

6

of asking the defendant to "admit to the validity of [the plaintiff's] claims and concede [the defendant's] defenses—matters [the plaintiff] knew to be in dispute.").

These precedents largely arise from cases in which deemed admissions amounted to merits-preclusive sanctions. Under Rule 198, a request for admission is deemed admitted—without the necessity of a court order—if a response is not timely served. TEX. R. CIV. P. 198.2(c). When a deemed admission arises from a merits-preclusive request—one in which the requestor essentially seeks an admission of liability—the deemed admission can amount to a death-penalty sanction.

But we have recognized that due process limits the application of this rule. *See Wheeler*, 157 S.W.3d at 443 ("[W]e have held . . . that absent flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions."). In short, "there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209 (1958); *see also TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) ("Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit.").

"When requests for admissions are used as intended—addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents—deeming admissions by default is unlikely to compromise presentation of the merits." *Wheeler*, 157 S.W.3d at 443; *see also Sanders*, 227 S.W.2d at 208 (holding requests for admissions were "never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense"). But a deemed admission that precludes a defendant from contesting the validity of the

7

plaintiff's claims or that forces him to concede his defenses, *see Marino*, 355 S.W.3d at 632, wields a result more severe than our rules intend or that due process will tolerate. Our cases on this point are not constitutional holdings per se, but rather reflect judicially created prophylactic measures designed to ensure that our rules of civil procedure—rules this Court promulgated—are not applied in a way that risks violating due process.

The same due-process concerns that arise in the deemed-admission context also come up when a trial court sanctions a party under Rule 215.4 for denying merits-preclusive requests for admissions. The sanction here—requiring Medina to pay Zuniga's reasonable expenses and attorney's fees—is admittedly lighter than a merits-preclusive deemed admission. Medina was, after all, allowed to defend the lawsuit as he wanted, including his concession of ordinary negligence at trial. But he should have been able to do so without the prospect of Rule 215.4 sanctions waiting in the wings.

It is axiomatic that the plaintiff bears the burden to prove the defendant's negligence. It cannot follow that the defendant who puts the plaintiff to her burden should later face sanctions for not admitting what he was entitled to deny. Our rules do not, strictly speaking, prohibit merits-preclusive requests for admissions. *See* TEX. R. CIV. P. 198.1 (requests may ask that a party "admit the truth of any matter within the scope of discovery, including statements of opinion or of fact or of the application of law to fact"). But due process nevertheless limits the extent to which sanctions can attach to denials of those requests. Simply put, merits-preclusive requests for admissions that carry the threat of sanctions risk putting the responding party to an impossible choice: give up your case now or face sanctions later. Worse, the responding party typically will be put to this election

8

long before any significant discovery has occurred, leaving him unable to make an informed decision on whether to concede or contest liability.

That is not how our system works. Just as a defendant may answer the claims against him with a general denial, *see* TEX. R. CIV. P. 92, he may also deny a merits-preclusive request for admission for which the other party bears the burden of proof. The very nature of the request provides the respondent "good reason" for failing to admit. *See* TEX. R. CIV. P. 215.4(b) ("The court shall make the order unless it finds . . . there was other good reason for the failure to admit."). Likewise, absent present knowledge that he will later concede he acted negligently, a defendant acting in good faith when responding to requests for admissions may maintain that his conduct was consistent with the ordinary standard of care. This is especially true at the outset of discovery. In this case, Medina decided at trial to concede negligence he had thus far denied. He was entitled to base this decision on how various aspects of the case had turned out—discovery, pre-trial rulings, jury selection, etc. And he was entitled to do so without fear he would be unduly punished for defending himself at the case's outset.

We need not painstakingly examine each of the requests for admissions made the basis of Zuniga's motion for sanctions to understand the gist of her argument. Through a battery of requests, she asked Medina to admit his negligence and complete responsibility in causing the accident. He initially refused, but later acceded. These facts do not give rise to sanctionable conduct under Rule 215.4. The requests at issue did not seek to narrow the contested questions for trial by eliminating noncontroversial issues or determining the genuineness of any relevant documents. Rather, Zuniga sought to litigate the entire case in one fell swoop of discovery—or at least to force Medina to take a position on every conceivable question on the merits without the

benefit of a full discovery period.[1] We do not doubt this is standard practice for many litigators, and we do not hold that such requests are outside the scope of Rule 198. But we reiterate: requests for admissions are no method for trying the merits. And we will not reward their use in that manner by upholding sanctions like those granted in this case.

In defense against Zuniga's motion for sanctions, Medina's counsel pressed an exception to Rule 215.4's applicability: that he "had a reasonable ground to believe that he might prevail on the matter." TEX. R. CIV. P. 215.4(b). Counsel explained that his defense strategy, as strategies are wont to do, evolved as the case ebbed toward trial. As the case proceeded, he had (1) sought and was granted leave to designate the school district a responsible third party for its failure to post a stop sign at the parking-lot exit and to post a speed limit in the parking lot; (2) sought unsuccessfully to have the district's negligence submitted to the jury for the same reasons; (3) retained an expert witness to testify that a five-mile-per-hour posted speed limit was warranted; (4) secured deposition testimony from an investigating police officer that a stop sign could have prevented the accident; and (5) discovered that the district had installed a stop sign four days after the accident. However, Medina's counsel continued, once the trial court decided to bifurcate the trials of Medina and his parents and ruled that subsequent remedial measures would not be admitted, he grew concerned that the expert's testimony could "open the door to allow the admission of other conduct." So counsel made the "tactical decision at trial not to pursue the responsible third-party claim." Counsel further decided, "after all of the evidence was gathered, that the best course was to attempt to limit the damages awarded in the case against" Medina. He

---

[1] We do not even allow trial courts to dispose of cases on no-evidence motions for summary judgment without first affording "an adequate time for discovery." TEX. R. CIV. P. 166a(i).

10

sought to accomplish this by conceding ordinary negligence but defending against gross negligence.

Ours is not to question the strategy counsel chose to pursue or his judgment that conceding negligence might benefit his client. Parties may change their minds on whether to defend or concede an issue on the merits for any number of reasons, including evidence uncovered through discovery, pre-trial rulings that alter the complexion of the case, or even the selection of the particular jury to hear the case. So although Medina certainly was permitted to contest sanctions on the ground that he reasonably thought he might finally prevail, this defensive argument is not his only recourse. Rather, parties defending against a Rule 215.4 motion based on merits-preclusive requests for admissions can simply argue a "good reason" always exists under rule 215.4(b) to deny a merits-preclusive request. Put differently, the question is not necessarily whether a litigation strategy is justifiable in hindsight but whether the merits-preclusive nature of the request for admission renders a denial non-sanctionable.

We have acknowledged that given the intended purpose of requests for admissions, "there is no doubt that some discretion is lodged in the trial court" to police their use. *Sanders*, 227 S.W.2d at 208. While the merits-preclusive nature of some requests for admissions is obvious given their appeal to ultimate issues of fact or law, others may not be so clear. This case, however, is black and white. It is dispositive that the basis for sanctions was simply a concession of negligence at trial that followed an earlier denial during discovery. Medina's negligence was an ultimate issue to be determined by the fact-finder; his decision to deny it before a strategic decision to later

11

concede it cannot form the basis of a Rule 215.4 award. We reverse the court of appeals' judgment on this issue and render judgment that Zuniga take nothing on her motion for sanctions.[2]

### III

Medina also challenges the jury's gross-negligence finding, arguing no evidence supports a conclusion that his actions rose above ordinary negligence. As previously noted, Medina conceded his negligence at trial and defended the case only against gross negligence. *See* TEX. CIV. PRAC. & REM. CODE § 41.003 (providing for exemplary damages if a claimant proves "gross negligence" by "clear and convincing evidence"). In reviewing a verdict for legal sufficiency, we "must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

 "Gross negligence has both an objective and a subjective component." *Reeder v. Wood Cty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012). First, "viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Second, "the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Id.* Under the first, objective element, an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). To establish the

---

[2] Because we hold that Medina's responses to Zuniga's requests for admissions were not sanctionable as a matter of law, we do not consider Medina's argument that Zuniga waived sanctions by waiting until after trial to file her motion.

12

subjective component, "the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005). The risk should be "examined prospectively from the perspective of the actor, not in hindsight." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008). The defendant need not have anticipated the precise manner of harm or to whom the injury would befall to have had awareness of the extreme risk. *U-Haul Int'l., Inc., v. Waldrip*, 380 S.W.3d 118, 139 (Tex. 2012).

Viewing the evidence favorably toward Zuniga, the court of appeals credited the following evidence as supportive of the objective component to the jury's gross-negligence finding:

- When another truck pulled in behind Medina at the parking-lot entrance drive and honked at him, Medina "proceeded to 'mess' with the other driver" by shifting his truck into reverse and backing toward the other driver before shifting into drive and entering the parking lot. 565 S.W.3d at 64.

- Medina accelerated rapidly through the parking lot, reaching a speed of 24 miles per hour. Zuniga's accident reconstructionist testified Medina would have pressed the accelerator nearly to the floor to achieve this speed in a short distance. The court acknowledged a speed-limit sign was not posted, but noted "evidence was introduced to show the speed limit was 10 miles per hour." *Id.*

- Medina decreased his speed to approximately 19 miles per hour as he approached the parking lot exit, but did not stop at the exit and looked only to his left before exiting and striking Zuniga, who was approaching from the right. *Id.* at 65.

- Although Medina attempted to brake prior to impact, he effectively braked after the impact. *Id.*

- A video taken by a camera on the school campus showed Medina's entrance to the parking lot and his drive through the parking lot. Although the accident occurs outside the field of view, the video "showed the number of people in the area," and "Medina testified he was aware other people were on campus, primarily to feed livestock as part of an agricultural program." *Id.*

13

- Photographs from the accident scene showed Medina's right rear tire came to rest on the sidewalk, and Zuniga's accident reconstructionist testified Medina drove on the sidewalk as he exited. *Id.*

Based on this evidence, the court of appeals concluded that "the jury could have found Medina sped through the parking lot and failed to stop or even sufficiently slow down at the parking lot exit." *Id.* Additionally, the jury "could have found Medina failed to look both ways before exiting and partially drove on the sidewalk." *Id.* This evidence, the court of appeals held, "is sufficient to establish that Medina's actions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Id.*

The court of appeals determined the same evidence supported the subjective component and further cited Medina's inconsistent statements on whether he looked both ways as evidence that he "knew that his failure to look both ways created a peril." *Id.* The court further noted that the evidence established that "Medina had previously been warned about his speeding and reckless driving on campus." *Id.* Accordingly, "[t]he jury could have found Medina's decision not to stop at the parking lot exit and not to look to his right demonstrated he did not care about the consequences to others." *Id.*

We disagree with the court of appeals that the proof of Medina's clearly negligent conduct constitutes any evidence satisfying the objective component of gross negligence. The objective gross-negligence standard must remain functionally distinguishable from ordinary negligence. As to the objective component, an "extreme degree of risk" is "a threshold significantly higher than the objective 'reasonable person' test for negligence." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994). "An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent." *Id.*

14

Viewing the evidence in favor of the jury's verdict, no doubt exists that Medina's driving was thoughtless, careless, and risky. But any driver knows that our roads are replete with thoughtless, careless, and risky drivers. Gross negligence can be supported only by an *extreme* degree of risk, not "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Ellender*, 968 S.W.2d at 921.

We further decline to see Medina's decision to "mess" with the driver behind him as any evidence of his gross negligence in later hitting Zuniga with his truck. That event—taking place at the entrance drive to the parking lot—bears no relationship to the accident at issue, which occurred at the parking-lot exit. Although it might be evidence relevant to Medina's maturity level, no evidence shows he hit the vehicle behind him or that he was not fully in control of his vehicle at that time. Simply put, this evidence is irrelevant to the circumstances under which Medina actually struck Zuniga.

The school's video-camera footage confirmed that students were coming and going on campus during the accident, and Medina acknowledged he knew as much. But the pedestrian traffic on campus at the time of the accident is a far cry from the crowds of students one might expect to see on a typical school day. The footage—which is a fixed-camera view including the entrance drive to the parking lot, the parking lot itself, and a partial view of the exit drive from the parking lot—shows a total of five people in the camera's field of view immediately before Medina arrives on campus. Three were walking toward parked vehicles as Medina drove up and were inside those vehicles or outside the field of view by the time Medina pulled into the parking lot. The remaining two were the students Medina stopped to talk to through his passenger window. An additional person exited the school and the parking lot on foot while Medina remained parked and while

15

Zuniga enters the field of view. But aside from the two students Medina was talking to, no pedestrians were in the field of view when Medina resumed driving. So while pedestrian traffic was not negligible, we also cannot conclude that driving through the parking lot at unsafe speeds at the day and time in question, while certainly risky, would pose an *extreme* risk as contemplated by the objective component of gross negligence.

Furthermore, Medina did not disregard any posted speed limit in the parking lot (none existed) nor did he ignore a stop sign at the parking-lot exit (again, there was none). Perhaps Medina was negligent for not stopping anyway. But we cannot hold under these facts that his failure to stop amounted to an extreme risk that would make injury to Zuniga substantially likely given no evidence demonstrated he saw Zuniga approaching the drive.

The evidence directly relevant to the accident supports the conclusion that Medina exited the parking lot at an unsafe speed and failed to look both ways before exiting. Additionally, Zuniga's reconstructionist testified Medina "cut the corner" of the sidewalk as he exited, which he deduced from a photograph showing that Medina's right-rear tire came to a rest on the border between the driveway and sidewalk. Obviously, a motorist's decision to drive in any area designated for pedestrians could be a factor in a gross-negligence analysis. But we decline to hold that gross negligence arises simply by inadvertently grazing the boundary between a roadway and sidewalk, particularly when the record shows—as it does here—no median was between them and that the sidewalk pavement extends across the parking-lot exit, making the line of demarcation less than clear. Furthermore, although the evidence strongly suggests the accident would have been avoided if Medina had looked both ways or driven more slowly, nothing indicates Medina would not have struck Zuniga in the driveway had he simply avoided grazing the sidewalk boundary.

16

Any of Medina's negligent acts here are common ingredients in a garden-variety car accident, whether involving a pedestrian or another vehicle. Doubtless, the failure to drive at a safe speed and the failure to look both ways before exiting a parking lot makes an accident more likely. But those failures, even taken together, do not amount to gross negligence. If they did, punitive damages would be routinely available in the most common types of auto accidents. Whatever the threshold for gross negligence is, it must be higher than that.

Because we hold no evidence supports the objective component of gross negligence, we need not further consider the subjective component. We reverse the court of appeals' judgment on this issue and render judgment that Zuniga take nothing on her gross-negligence claim.

* * *

For the reasons explained above, we reverse the court of appeals' judgment and render judgment that Zuniga take nothing on either her motions for sanctions or her gross-negligence claim.

---

Jeffrey V. Brown
Justice

OPINION DELIVERED: April 26, 2019

17