Lynda MARINO, Petitioner,

v.

Charles KING, Respondent.

No. 10–0854.

Supreme Court of Texas.

Oct. 21, 2011.

Marvin Bruce Martin, Attorney at Law, Bryan, TX, for Lynda Marino.

Clint Foster Sare, Law Office of Clint F. Sare, Bryan, TX, Paul Wayne Murphy, Murphy & Brown LLP, College Station, TX, for Charles King.

PER CURIAM.

This is an appeal from a summary judgment based on deemed admissions. By rule, a request for admission is considered admitted if a response is not timely served. TEX.R. CIV. P. 198.3. The response in this case was a day late, and the requested admissions were deemed admitted under the rule. The trial court granted a subsequent motion for summary judgment, based on these admissions, after the pro se litigant did not file a written response to the motion asking for them to be withdrawn. The court of appeals likewise affirmed the summary judgment, concluding that the litigant had waived complaint by never formally asking the trial court to withdraw the deemed admissions on which the summary judgment was based. 356 S.W.3d 28, 30-31 (Tex.App.-Waco 2010) (mem.op.).

The litigant, no longer pro se, complains here that she adequately preserved error in the trial court under prior precedent. *See Wheeler v. Green,* 157 S.W.3d 439, 443 (Tex.2005) (per curiam). We agree. We further conclude that good cause existed for the trial court to allow the withdrawal of her deemed admissions and to deny the motion for summary judgment. Accordingly, we reverse the court of appeals' judgment and remand the cause to the trial court for further proceedings.

Charles King hired Lynda Marino to perform accounting services for his company, Charles King Horticultural Services, Inc. Several years later, King discharged Marino claiming that she had improperly taken money from one of the business accounts. King subsequently sued Marino in his own name, asserting conversion, theft, fraud, and other claims. Representing herself, Marino generally and specifically denied King's allegations, asserting that the money in question was for work she had performed for his business. Marino also filed a verified denial, pointing out that the money allegedly taken was from King's corporation, which should therefore be the plaintiff rather than King.

After filing suit, King sent a series of discovery requests that included requests for admissions. Through these requested admissions, King sought to have Marino admit liability for the various claims she had already denied. While assembling the documents and other discovery simultaneously sought with these admissions, Marino notified King's attorneys by letter that she would have everything to them by June 2, 2009, and indeed she responded to all discovery requests on that day. In her responses to the requested admissions, Marino again denied liability.

Ten days later, King moved for summary judgment, asking the trial court to set the summary judgment hearing on the first available date. The sole basis for King's motion was Marino's failure to timely respond to his admission requests; admissions he asserted were deemed admitted because Marino's answers were one day late. King asked for an award of the funds he claimed Marino had taken plus attorney's fees. The summary judgment hearing was set for August 7, 2009.

Marino did not file a formal response to the motion for summary judgment, but she did file a motion to dismiss and a motion for mediation before the hearing. In her motion to dismiss, Marino asserted that King's corporation had employed her, not King, and that the corporation should

therefore be the plaintiff. She also sought discovery in the interim, serving King with requests for disclosure, production, and admissions, as well as interrogatories. King answered some of the interrogatories and objected to others. What became of the rest of this discovery is not revealed by the record. Finally, Marino appeared for the summary judgment hearing on August 7.

At this hearing, the trial court invited Marino to respond to the motion for summary judgment, which resulted in the following exchange:

MS. MARINO: Okay. I worked on getting the things together that were requested. Some of the requests took a fair [amount] of time. I was trying to comply and get it right. Finding all old tax returns and backup for the checks that were paid to me. When I knew that time was running out—my daughter is a special needs, and she had a couple of Special Olympics events that month. And when I knew I was running out of time, I did send the attorney a letter, which I have a copy. It's been filed. But here it is. On May 22nd I sent him a letter saying that it would be probably June 2nd before I could get it to him. Her events took all two weekends. And I'm doing this in my spare time, trying to keep my job, etc.

MR. MURPHY [King's lawyer]: And, your Honor, of course, I would object to the introduction of the letter.

THE COURT: Well—

MS. MARINO: It's on file.

THE COURT: Well, the fact it's on file doesn't mean it's admissible or not. Ms. Marino, let me sort of—when you undertake to represent yourself, you're perfectly free to do that. But the problem is when you undertake to represent yourself you have to follow the same rules that we guys who have law degrees do. Okay. And there are methods by which you could have requested an extension of time. Just writing a letter to a lawyer saying, "Gee, I haven't had time to do this," is not sufficient under the rules of civil procedure. There are methods that you could have taken to extend the time; however, you did not do so. And I can't change that fact. I'm sympathetic to you. But the job that I have to do has to be one where sympathy is pushed to the side, and I have to rule on what the law says I am required to do. There were no timely admissions filed. Okay. Either denials or admissions. Under the law once that 30 days goes by, the law deems those to have been admitted whether or not they were, could have been admitted, or denied. You chose to represent yourself, and I understand you have the right to do that. But when you come to me, while I am sympathetic to the fact you have a special needs daughter and while I'm sympathetic to the fact she had Special Olympic matters, that might have been a good enough reason for me to have extended the time had you properly asked to do that. But you didn't.

MS. MARINO: Well, I feel like I have a good defense, and it should be heard. And the money I received from Mr. King was for work I did for his corporation. And that's why I have on file a motion to dismiss this case. I have asked and received some discovery from the plaintiff, although not complete in many places. Complete discovery could help sustain my motion to dismiss. I also have a motion to compel discovery pending before the Court at this time. So I just respectfully ask, your Honor, to not allow the summary judgment and proceed to hear my motion to dismiss.

THE COURT: Well, ma'am, I don't know what lawyer has been writing that

for you. That frankly sounds like the language of a lawyer.

MS. MARINO: No.

THE COURT: Ma'am, I'm sympathetic to you, and I understand your position. But I'm bound by what the law says. The law says that a motion for summary judgment is filed based on deemed admissions. And the admissions have been deemed by operation of law. You have not filed any kind of responsive pleading to the motion for summary judgment. You filed a lot of other stuff but not a response to the motion for summary judgment. Under Rule 166 of the rules of civil procedure, I'm obligated to grant the summary judgment. There's nothing else I can do. You have an opportunity to have this case appealed, and you certainly have the right to do so. But I'm bound by what the law is, and I hope you understand that. The summary judgment will be granted.

Marino's argument and pending motions raised a ground for continuing the summary judgment hearing—she needed King's discovery—and a ground to deny the summary judgment—she never worked for King. The trial court also sympathetically agreed that Marino might have had good cause to extend the discovery deadline. But because Marino did not file a response to the summary judgment motion, asking either for an extension of the discovery deadline or the withdrawal of her deemed admissions, the trial court concluded that it could do "nothing else" but grant the motion. The court accordingly rendered summary judgment for King for $33,559.92, plus $5,000 attorney's fees.

Marino thereafter filed a timely motion for new trial in which she repeated her arguments at the summary judgment hearing, adding that she could not afford an attorney but had tried her best "to meet the Court's expectations." In closing, she asked for an opportunity to correct her mistake, if she had failed to meet a procedural requirement or needed to supply additional information. Her motion for new trial was overruled by operation of law, and Marino perfected her appeal. The court of appeals thereupon affirmed the summary judgment, concluding that Marino had waived complaint about the deemed admissions "by failing to raise the issue in any manner, either before or after judgment, to the trial court." 356 S.W.3d at 31.

 Requests for admission are intended to simplify trials. They are useful when "addressing uncontroverted matters or evidentiary ones like the authenticity or admissiblilty of documents." *Wheeler,* 157 S.W.3d at 443. They may be used to elicit "statements of opinion or of fact or of the application of law to fact." Tex.R. Civ. P. 198.1. King's requests here, however, asked essentially that Marino admit to the validity of his claims and concede her defenses—matters King knew to be in dispute. Requests for admission were never intended for this purpose. *Stelly v. Papania,* 927 S.W.2d 620, 622 (Tex.1996) (per curiam) (quoting *Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206, 208 (1950) (stating that requests for admission were "never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense")).

 As we have previously observed, requests for admission should be used as "a tool, not a trapdoor." *U.S. Fid. and Guar. Co. v. Goudeau,* 272 S.W.3d 603, 610 (Tex.2008). And when admissions are deemed as a discovery sanction to preclude a presentation of the merits, they implicate the same due process concerns as other case-ending discovery sanctions. *Wheeler,* 157 S.W.3d at 443 (citing *TransAmerican*

*Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917–18 (Tex.1991)). Thus, in *Wheeler* we required a showing of "flagrant bad faith or callous disregard for the rules" to substantiate a summary judgment based solely on deemed admissions. *See id.* at 443 (noting that "absent flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions").

■ Generally, a party responding to requests for admissions must serve a written response on the requesting party within 30 days after service. TEX.R. CIV. P. 198.2(a). The response time may be modified by agreement or by the court for good cause. *Id.* 191.1. If the response is not served timely, however, the request is deemed admitted without the necessity of a court order. *Id.* 198.2(c). But a trial court may allow the withdrawal of a deemed admission upon a showing of (1) good cause and (2) no undue prejudice. *Id.* 198.3. And this same standard applies to a late summary judgment response. *Wheeler,* 157 S.W.3d at 442 (citing *Carpenter v. Cimarron Hydrocarbons Corp.,* 98 S.W.3d 682, 687–88 (Tex.2002)).

In *Wheeler,* we described the requisite demonstration of good cause and undue prejudice. *Id.* at 442–43. Good cause, we said, "is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Id.* at 442. Undue prejudice we found to depend "on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Id.* at 443.

As in this case, the pro se litigant in *Wheeler* did not file a summary judgment response but came to argue her case at the summary judgment hearing "because she was again mistaken as to what a summary judgment 'hearing' was." *Id.* at 442. We concluded that the pro se litigant's genuine confusion over discovery deadlines and summary judgment procedures was evidence of good cause, negating the conscious disregard or deliberate neglect required to support a merits-preclusive sanction. *Id.* at 443. We further found no evidence of undue prejudice because the admission responses, although two days late, had been served months before the summary judgment hearing. *Id.*

Marino argues that her case is materially indistinguishable from *Wheeler.* In both cases, responses to the requested admissions were marginally late but were received before the other party moved for summary judgment on deemed admissions; the pro se litigant did not formally respond to the summary judgment motion but attended the summary judgment hearing believing that was the time for response; the trial court granted summary judgment despite the existence of good cause for the withdrawal of the deemed admissions; the pro se litigant filed a motion for new trial, asserting that summary judgment was improper but not explicitly asking that the admissions be withdrawn; and the court of appeals affirmed the summary judgment because the pro se litigant failed to specifically ask for the withdrawal of the admissions. In *Wheeler,* we held that "the trial court should have granted a new trial and allowed the deemed admissions to be withdrawn upon learning that the summary judgment was solely because [the] responses were two days late." *Id.* at 444. The result should be no different here.

■ Although trial courts have broad discretion to permit or deny the withdrawal of deemed admissions, they cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The due process concern recognized in *Wheeler* is one such principle that inheres to a request for merits-preclusive admissions. *See In re Rozelle,* 229 S.W.3d 757, 763

(Tex.App.-San Antonio 2007) (quoting *Wheeler* and observing that this due process concern is a "guiding rule and principle that applies '[w]hen requests for admissions are [not] used as intended,' and 'when a party uses deemed admissions to try to preclude presentation of the merits of a case' "). Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults. Using deemed admissions as the basis for summary judgment therefore does not avoid the requirement of flagrant bad faith or callous disregard, the showing necessary to support a merits-preclusive sanction; it merely incorporates the requirement as an element of the movant's summary judgment burden. *See Wheeler*, 157 S.W.3d at 443–44.

Good cause for the withdrawal of the deemed admissions exists in this case because there is no evidence of flagrant bad faith or callous disregard for the rules and nothing to justify a presumption that Marino's defense lacks merit. *Id.* Moreover, there is nothing to suggest that King was unable to prepare for trial without the admissions and thus no evidence that their withdrawal will cause him undue prejudice; rather, "the presentation of the merits of the action will be subserved by permitting [Marino] to withdraw the admission[s]." TEX.R. CIV. P. 198.3(b). The trial court accordingly erred in rendering summary judgment on deemed admissions, and the court of appeals erred in affirming that judgment because Marino did not waive the error.

Without hearing oral argument, we reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion. TEX. R.APP. P. 59.1.