

# NUMBER 13-21-00326-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**BILLY J. DAVIS, GARY DAVIS,
AND B.J. DAVIS BUILDER, INC.,**                                    **Appellants,**

**v.**

**JOHN CROCKETT AND
JENNIFER CROCKETT,**                                              **Appellees.**

---

**On appeal from the 24th District Court
of Victoria County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Justice Benavides**

In this construction dispute, appellants Billy J. Davis, Gary Davis, and B.J. Davis

Builder, Inc. appeal from summary judgment entered in favor of appellees John and

Jennifer Crockett that was based, in part, on appellants' deemed admissions. As a preliminary matter, appellants now question whether the judgment was a final appealable judgment. To the extent the judgment was final, appellants contend summary judgment was improper because: (1) the trial court abused its discretion in denying appellants' motion to withdraw the deemed admissions; (2) regardless, the evidence was insufficient to support various aspects of the judgment; (3) the trial court improperly rendered judgment against the individual appellants for damages caused by the corporation; (4) the damages awarded against the individual appellants, including attorney fees, were otherwise excessive and not supported by competent evidence; and (5) the summary judgment hearing was held without appellants' trial counsel, who did not receive notice of the hearing.[1] We reverse and remand.

## I.    BACKGROUND

B.J. Davis Builder Inc. (the Company) is a Texas corporation in the residential construction business. Billy J. Davis (B.J.) is the Company's president and chief operating officer, and his son, Gary Davis, served as vice president during the relevant period.

According to the Crocketts' live pleading, in 2017, they contracted with the Company for the construction of a new home in Victoria, Texas. Shortly after the Crocketts moved in, cracks began appearing throughout the interior and exterior of the house, and doors began to stick and not latch. The Crocketts retained an independent engineer who "determined that the foundation has experienced downward movement in the center of the residence due to inadequate compaction of the soil on the lot prior to the foundation

---

[1] In their brief, appellants have listed eight issues, several of which are multifarious and repetitive. We have reorganized and consolidated some of the issues for clarity.

being poured by [the Company]."

In May of 2019, the Company and the Crocketts entered a new agreement whereby, among other terms, the Company agreed to buy back the house for the purchase price, build the Crocketts a new house, and finance the new construction. As part of the agreement, the Crocketts paid the Company $12,197.50 for changes and upgrades to the new house.

After several months of minimal progress on the new construction and unsatisfactory explanations for the delays, the Crocketts sent the Company a formal notice of default. When the Company failed to respond to the notice or account for the twelve-thousand-dollar payment, the Crocketts filed suit against the Company and its two officers on March 26, 2020. According to the petition, when Gary negotiated the new contract on behalf of the Company, he knew the Company was financially incapable of performing the agreement because the Company had defaulted on other contracts with customers and failed to pay subcontractors, resulting in liens against those properties.

The Crocketts' claims included breach of contract and warranty and a request for an accounting against the Company and negligent misrepresentation against B.J. and Gary. Against all three appellants, the Crocketts alleged violations of the Texas Deceptive Trade Practices Act and Texas Construction Trust Fund Statute; fraudulent inducement, common law fraud, and fraud in a real estate transaction; and breach of fiduciary duty.

The petition was accompanied by forty-nine requests for admissions, many of which asked appellants to admit liability under the Crocketts' various theories of recovery. For example, request number twenty-five asked: "Admit that [the Company] knowingly

made material misrepresentations of fact to the Crocketts about [the Company's] ability to complete the Contract attached as Exhibit A."

Appellants' then-counsel filed an original answer with a general denial but failed to respond to the Crocketts' requests for admissions. Approximately two months later, the Crocketts filed a motion for partial summary judgment, contending that appellants' liability on each claim had been conclusively established by their deemed admissions. The Crocketts further argued that appellants were precluded from offering any evidence contrary to their admissions.

Within a week, appellants filed a motion to substitute counsel and a motion to withdraw the deemed admissions. The motion to withdraw explained that appellants' original counsel "failed to observe that the [Crocketts] had submitted a Request for Disclosure and Requests for Admissions attached to the original petition and that a time requirement for response to those items was in play." According to appellants, their failure to timely respond was due to "the oversight of their first counsel . . . rather than . . . conscious indifference." Along with the motion, appellants included responses to the requests for admissions, which, unsurprisingly, denied the Crocketts' various requests to admit liability. The Crocketts opposed the motion to withdraw, primarily arguing that appellants failed to demonstrate good cause with evidence, such as an affidavit from their counsel.

Several months later, on October 26, 2020, the trial court considered the competing motions during a hearing. The trial court denied appellants' motion to withdraw the deemed admissions and granted the Crocketts' motion for partial summary judgment.

The Crocketts later moved for summary judgment on damages. The trial court granted the motion and entered a written "Final Judgment" awarding the Crocketts damages, attorney fees, and conditional appellate attorney fees against all three appellants. The judgment contains the following language:

- This judgment is final and there are no other parties or causes of action outstanding.

- All writs and process for the enforcement and collection of this Judgment or the costs of Court may be issued as necessary.

- Any other relief requested in this case that was not previously granted or ordered herein is hereby DENIED.

Thereafter, appellants filed a verified motion for new trial, reiterating that they did not timely respond to the Crocketts' requests for admissions only because their original counsel "overlooked" them. The trial court denied the motion, and this appeal ensued.

## II.    FINALITY

By what we consider to be their first issue, appellants question whether the judgment was final and appealable. While acknowledging that the judgment contains some finality language, appellants nonetheless contend in their brief that such language is not "clear and unequivocal" because the judgment lacks an express statement that the judgment is "appealable." We find that the judgment is final and that we therefore have jurisdiction over the appeal.

### A.    Applicable Law

Generally, only final judgments are appealable. *See Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000) ("An appellate court lacks jurisdiction to review an interlocutory order unless a statute specifically authorizes an exception to the general

5

rule, which is that appeals may only be taken from final judgments."). "[W]hen there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001). Accordingly, following summary judgment proceedings, we examine a judgment for a "clear indication that the trial court intended the [judgment] to completely dispose of the entire case." *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam) (quoting *Lehmann*, 39 S.W.3d at 205). "Although no 'magic language' is required, a trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable." *Id.* (citing *In re R.R.K.*, 590 S.W.3d 535, 543 (Tex. 2019)).

We only consult the record when the trial court's intent is unclear from the judgment. *In re R.R.K.*, 590 S.W.3d at 541. Thus, even if the judgment and record are at odds, a judgment with "a clear and unequivocal statement of finality" controls. *Bella Palma*, 601 S.W.3d at 801 (citing *Lehmann*, 39 S.W.3d at 206).

## B. Analysis

Here, the trial court plainly expressed its intent that the judgment be considered final: "This judgment is final and there are no other parties or causes of action outstanding." There is nothing in the judgment to suggest otherwise, and contrary to appellants' argument, an express statement that the judgment is "appealable" is

unnecessary.[2] *See Bella Palma*, 601 S.W.3d at 801 (rejecting a "magic language" requirement); *see also Martin v. Serv. Supply of Victoria, Inc.*, No. 13-15-00210-CV, 2017 WL 2200336, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 16, 2017, no pet.) (mem. op.) ("A judicial decree that actually disposes of all parties and all claims is a final judgment, regardless of the language used . . . .").

Even if we look past the judgment to the record, there is no indicia that the judgment was not intended to be final. Appellants contend that the judgment is not final merely because various parts of the judgment are allegedly not supported by competent evidence, but whether a judgment is erroneous is a distinct inquiry from finality. *See Lehmann*, 39 S.W.3d at 200 ("A judgment that grants more relief than a party is entitled to is subject to reversal, but it is not, for that reason alone, interlocutory." (citing *Young v. Hodde*, 682 S.W.2d 236 (Tex. 1984) (per curiam))). Having overruled appellants' first issue, we turn to the merits of the appeal.

### III. DEEMED ADMISSIONS

By their second issue, appellants contend that the trial court abused its discretion by denying their motion to withdraw their deemed admissions.

### A. Applicable Law

Requests for admissions, which are governed by Texas Rule of Civil Procedure

---

[2] Other language in the judgment that signals finality includes the conditional appellate attorney fee awards and the authorization for the issuance of "[a]ll writs and process for the enforcement and collection of th[e] [j]udgment." *See* TEX. R. CIV. P. 622 (permitting execution only in cases "in which a final judgment has been rendered"); *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 831 (Tex. 2005) ("[A]n interlocutory judgment may not be enforced through execution."); *In re Roman*, 554 S.W.3d 73, (Tex. App.—El Paso 2018, no pet.) ("[T]he trial court abused its discretion by permitting execution to issue because an interlocutory judgment cannot be enforced through execution.").

198, are "written requests that the other party admit the truth of any matter within the scope of discovery." TEX. R. CIV. P. 198.1. When requests for admissions are served with an original petition, the defendant "need not respond until 50 days after service of the request." *Id.* R. 198.2(a). "If a response is not timely served, the request is considered admitted without the necessity of a court order." *Id.* R. 198.2(c). A matter admitted under Rule 198 is "conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." *Id.* R. 198.3.

> The court may permit the party to withdraw or amend the admission if: (a) the party shows good cause for the withdrawal or amendment; and (b) the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved by permitting the party to amend or withdraw the admission.

*Id.*

The Supreme Court of Texas, which promulgates the rules of procedure, has explained that Rule 198 was designed for "addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents." *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005) (per curiam) (citing *Stelly v. Papania*, 972 S.W. 620, 622 (Tex. 1996) (per curiam)). The purpose of requests for admissions is *not* to ask the defendant to admit the validity of the plaintiff's claims. *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) (per curiam); *Stelly*, 972 S.W. at 622. They should be used as "a tool, not a trapdoor." *Marino*, 355 S.W.3d at 632 (quoting *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008)).

"[T]rial courts have broad discretion to permit or deny withdrawal of deemed admissions, but they cannot do so arbitrarily, unreasonably, or without reference to

8

guiding rules or principles." *Wheeler*, 157 S.W.3d at 443 (citing *Stelly*, 972 S.W. at 622).

Normally, a party seeking to withdraw deemed admissions must demonstrate good cause and no undue prejudice to the requestor. *Id.* at 442 (citing *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687–88 (Tex. 2002)); *see* TEX. R. CIV. P. 198.3.

However, when a party uses deemed admissions to preclude presentation of the merits of a case, as the Crocketts did here, due process concerns arise because not allowing a party to withdraw merits-preclusive deemed admissions is tantamount to a death penalty sanction. *Id.* at 442–43. Thus, in such cases, good cause is presumed unless the party opposing the withdrawal can demonstrate bad faith or callous disregard of the rules by the party seeking the withdrawal. *McEndree v. Volke*, 634 S.W.3d 413, 424 (Tex. App.—Eastland 2021, no pet.); *Ralls v. Funk*, 592 S.W.3d 178, 183 (Tex. App.—Tyler 2019, pet. denied); *Ramirez v. Noble Energy, Inc.*, 521 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Even in the absence of a motion to withdraw, a party moving for summary judgment on merits-preclusive deemed admissions must satisfy this requirement to meet its summary judgment burden. *Marino*, 355 S.W.3d at 634 (citing *Wheeler*, 157 S.W.3d at 443–44).

"Bad faith is not simply bad judgment or negligence, but the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose." *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 666 (Tex. App.—San Antonio 2014, pet. denied) (quoting *Armstrong v. Collin Cnty. Bail Bond Bd.*, 233 S.W.3d 57, 63 (Tex. App.—Dallas 2007, no pet.)). "A determination of bad faith or callous disregard can be made when a party is mindful of pending deadlines and nonetheless either consciously or flagrantly fails to

comply with the rules." *Ralls*, 592 S.W.3d at 183 (citing *Ramirez*, 521 S.W.3d at 860).

**B.    Analysis**

The Crocketts argue on appeal, just as they did below, that appellants' motion to withdraw was deficient because appellants failed to demonstrate good cause. However, of the Crocketts' forty-nine requests for admissions, twenty-eight asked appellants to admit liability on the Crocketts' various claims, and three asked appellants to admit that their conduct "caused the damages sustained by the Crocketts." Consequently, as the party opposing withdrawal and moving for summary judgment on the deemed admissions, it was the Crocketts' burden to prove appellants acted in bad faith or with callous disregard for the rules. *See Marino*, 355 S.W.3d at 634; *Wheeler*, 157 S.W.3d at 443–44; *McEndree*, 634 S.W.3d at 424; *Ralls*, 592 S.W.3d at 183; *Ramirez*, 521 S.W.3d at 857.

No such evidence exists in the record. To the contrary, as explained in their motion to withdraw and motion for new trial, appellants' failure to timely respond was due to an oversight by their former counsel, who timely filed a general denial on appellants' behalf but "overlooked" the requests for admissions included with the Crocketts' petition. *See Wheeler*, 157 S.W.3d at 442 ("Good cause is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." (first citing *Carpenter*, 98 S.W.3d at 687–88; and then citing *Stelly*, 927 S.W.2d at 622)). Within a week of the Crocketts filing their motion for summary judgment, appellants' new counsel realized the mistake, filed a motion to withdraw the deemed admissions, and responded to the requests. *Cf. Morgan v. Timmers Chevrolet, Inc.*, 1 S.W.3d 803, 807 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("This is a case wherein counsel failed to answer

10

after the error was called to his attention, a factor that weighs against a finding of "good cause." (citing *N. River Ins. v. Greene*, 824 S.W.2d 697, 701 (Tex. App.—El Paso 1992, writ denied))).

Likewise, the record does not support a finding that the Crocketts would have been unduly prejudiced by withdrawing the deemed admissions. "Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Wheeler*, 157 S.W.3d at 443 (first citing *Carpenter*, 98 S.W.3d at 687; and then citing *Stelly*, 927 S.W.2d at 622). The Crocketts filed their motion for summary judgment on liability early in the litigation, approximately three months after filing suit and approximately two months after appellants filed their general denial. They have never argued that they would be unable to prepare for trial without the admissions, nor could they credibly do so. *See Marino*, 355 S.W.3d at 634 (reversing summary judgment based on deemed admissions because "there is nothing to suggest that [the party opposing withdrawal] was unable to prepare for trial without the admissions and thus no evidence that their withdrawal will cause him undue prejudice"); *Wheeler*, 157 S.W.3d at 443 (finding no undue prejudice because party opposing withdrawal received late responses "six months *before* the summary judgment motion was heard").

Rather, the Crocketts' use of deemed admissions in this case prevented a presentation on the merits. *See Wheeler*, 157 S.W.3d at 443 n.2 (explaining that, in contravention of Rule 198.3(b), a "presentation of the merits will suffer . . . if the requestor *can* prepare but the case is decided on deemed (but perhaps untrue) facts anyway").

Accordingly, we hold that the trial court abused its discretion when it denied appellants' motion to withdraw and instead rendered summary judgment on the deemed admissions.[3]

## IV.    CONCLUSION

We reverse the trial court's judgment and remand with instructions to grant appellants' motion to withdraw deemed admissions, and for further proceedings.

GINA M. BENAVIDES
Justice

Delivered and filed on the
13th day of October, 2022.

---

[3] Because this issue is dispositive, we do not reach appellants' other issues. *See* TEX. R. APP. P. 47.1.

12