**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00030-CV**
_____

**PLAZA CITY, LLC, Appellant**

**V.**

**AES SEPTIC, LLC, Appellee**

_____

**On Appeal from the 457th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-07-09861-CV**
_____

**MEMORANDUM OPINION**

In its sole issue, Appellant Plaza City, LLC ("Plaza") asks whether the trial

court erred in granting AES Septic, LLC's ("AES") Traditional Motion for Summary

Judgment. Plaza argues that: (1) AES's Motion for Summary Judgment should have

been denied, because it was untimely filed; (2) the doctrine of collateral estoppel

does not apply to this case; (3) the impact of AES's breach created fact issues

pertaining to causation and damages; and (4) the deemed admissions AES relied on

in its motion were merit preclusive, the result of a good-faith mistake, and should

1

have been set aside. For the following reasons, we will reverse the trial court's judgment and remand.

## I. Background

### A. Parties' Relationship and History

Plaza owns an office building in Montgomery County and entered into an agreement with Tenant[1] for the buildout of certain space that required redesigning the septic system to the building. The lease commenced on May 1, 2018, and Plaza had ninety days to complete the improvements or Tenant could terminate the lease. The lease provided that time was of the essence and required "strict compliance with the times for performance." The lease obligated Tenant to pay rent on 10,900 square feet of space. In April 2018, Plaza hired AES to upgrade the septic system and prepare drawings to submit to the Montgomery County Permit Department ("MCPD"), which were required to be signed as approved by a licensed sanitarian.

Tenant's affidavit and emails between Plaza, Plaza's architect, and Tenant showed that Tenant learned in May 2018 the occupancy restrictions on the leased premises would be 159 given the square footage of the "party rooms." The emails further revealed that Tenant's business plan required a minimum occupancy of 200, and Tenant claimed that Plaza had previously been made aware of this. The lease's

---

[1]Tenant is Crawford Strategies, LLC and Jennifer Crawford, who are not parties to this appeal. Jennifer Crawford executed the lease with Plaza and was the affiant in the affidavit referenced in the above paragraph.

written terms do not address the Tenant's occupancy needs. Given the occupancy restriction, Tenant told Plaza not to do any further work on the premises until they could meet.

In June 2018, Plaza and Tenant met with the MCPD, who advised them that the sanitarian's signature on AES's septic drawings had been forged, and MCPD denied the permit. On June 18, 2018, Tenant sent a letter to Plaza indicating they were terminating their agreement. The letter from Tenants to Plaza advised, "Due to the recent fraudulent activities surrounding the septic permit involving our potential business, PlayCation Zone, we must remove ourselves from this situation, in particular, by terminating the lease at 32507 Tamina Road." Tenant also demanded return of their payments, which Plaza refused.

In a separate lawsuit filed in Montgomery County Court at Law, Tenant sued Plaza for breach of contract. Tenant filed two traditional motions for summary judgment, one as to liability on their breach of contract claim and another for damages. In its Traditional Motion for Partial Summary Judgment as to Liability for Breach of Contract, Tenant argued that Plaza failed to perform, specifically citing to the activities around the septic permit but also arguing that regardless of the septic permit issue, Plaza failed to meet Tenant's occupancy requirements and instead of providing the 10,900 square feet of space they agreed to, Plaza only provided 9,900. The trial court in that case granted Tenant's motions for summary judgment on

3

liability and damages, awarding damages against Plaza in the amount of $83,560.00 plus attorney's fees. Tenant's motions, the summary judgment evidence, and orders were made part of the summary judgment record in this case.

## B. Procedural Posture

Plaza alleged that AES advertised their company as a "septic system designing, permitting and installation company." Plaza hired AES to design the expansion of the septic system, and prior to the installation, AES was required to obtain a permit from the MCPD. Plaza alleged that AES submitted documents to the MCPD with a forged sanitarian's signature, specifically Stephanie L. Sturman, and that when she advised the MCPD that AES forged her signature, the MCPD denied the permit application and the expansion project was halted. Plaza further alleged that due to the halt of the project, Tenant terminated the long-term lease agreement and demanded a refund of all payments made toward the lease agreement.

After Tenant terminated the lease, Plaza sued AES for breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation. Plaza subsequently amended its Petition and added Stephanie L. Sturman, the sanitarian whose seal AES used, as a defendant.[2] Plaza also added causes of action against AES for "civil conspiracy/joint and several liability." Plaza sought actual damages, exemplary

---

[2]The trial court severed and ordered Plaza's claims against AES dismissed with prejudice.

4

damages, and attorney's fees. AES asserted a general denial, then later amended its answer adding failure to mitigate, collateral estoppel, and res judicata as affirmative defenses. AES also designated Tenant as a responsible third party.

## C. Motion for Summary Judgment, Response, and Evidence

### 1. AES's First Motion for Summary Judgment

In January 2020, AES initially filed its Traditional Motion for Summary Judgment for All Claims ("First Motion for Summary Judgment"), which the trial court did not rule on. AES argued, among other things, that it was entitled to summary judgment based on Plaza's deemed admissions to AES's Requests for Admissions to Plaza filed on September 10, 2019, which Plaza failed to answer. In response to the motion, Plaza argued its deemed admissions were merit-preclusive and for that reason should be set aside since AES was required to show that Plaza acted in "flagrant bad faith or callous disregard," which Plaza argued AES could not do. The Response noted Plaza's firm was involved in a law firm merger, and its failure to answer AES's Requests for Admissions resulted from an "unfortunate oversight." The record, however, does not show Plaza presented any evidence supporting its claims of oversight. Plaza also never filed a separate motion to strike or a motion to withdraw the deemed admissions. Likewise, the record does not show that Plaza ever answered the Requests for Admissions. AES set its First Motion for

Summary Judgment for submission, but it does not appear the trial court considered it as the record does not contain an order denying or granting AES's Motion.

**2. AES's Second Motion for Summary Judgment**

In October 2020, AES filed another Traditional Motion for Summary Judgment for All Claims, which the trial court granted. AES argued that it conclusively negated causation and damages as to all Plaza's claims on two grounds. First, AES argued that collateral estoppel barred Plaza from litigating issues in this action that were fully and fairly litigated in the suit filed in the Montgomery County Court at Law, which includes whether any delays in obtaining the septic permit caused Plaza to breach it lease with Tenant, or whether its breach of the lease had caused its damages. According to AES, the Montgomery County Court at Law had already ruled that Plaza breached its lease with Tenant by failing to provide a building with the space—the square footage—Tenant required, a matter unrelated to delays in obtaining a permit on the building's septic system. Second, AES argued that the deposition of Plaza's corporate representative, Antonio Rogers, together with Plaza's deemed admissions, establish it has no damages it can relate to AES's breach. According to AES, Rogers testified that forging Sturman's name to the documents associated with the permit was an immaterial breach of the parties' contract, a breach that resulted in a delay of about two weeks before Plaza submitted

6

another application to MCPD for a permit to the septic system serving Plaza's building.

AES's summary judgment evidence includes: (1) counsel's affidavit averring it sent Requests for Admissions to Plaza, which Plaza never answered, and outlined a pattern of discovery abuse that required it to file motions to compel before Plaza fully answered discovery; (2) Tenant's Traditional Motion for Partial Summary Judgment as to Liability for Breach of Contract with accompanying evidence; (3) Interlocutory Order Granting [Tenant's] Traditional Partial Motion for Summary Judgment as to Liability for Breach of Contract without specifying basis; (4) Order Granting [Tenant's] Motion for Summary Judgment as to Damages; (5) Order Granting [Tenant's] Motion to Dismiss; (6) Plaintiff's 4th Amended Original Petition; (7) Tenant's Reply in Support of Traditional Motion for Partial Summary Judgment as to Liability for Breach of Contract; (8) Plaza's Response to Tenant's Partial Summary Judgment Motion as to Liability for Breach of Contract in which Plaza argued Tenants repudiated the contract before the improvements to the space were complete under the lease, which it argues excused its duty to perform the lease and creates a fact issue regarding whether the seven-day delay related to obtaining the septic permits constituted a material breach of the lease; (9) AES's Motion to Compel the Production of Documents and Answers Responsive to Defendant's

7

Discovery Requests; and (10) a transcript of the deposition of Plaza's owner and corporate representative Antonio Rogers.

Plaza responded to the Motion for Summary Judgment (its second) that AES filed in October 2020. Plaza attached the following evidence to its Response: (1) amended Docket Control Order; (2) the lease signed by Tenant; (3) correspondence pertinent to Sturman's signature on the documents submitted for the permit; (4) Tenant's notice canceling the lease dated June 18, 2018 to Plaza, given the "recent fraudulent activities surrounding the septic permit[;]" (5) Tenant's Traditional Motion for Partial Judgment as to Liability for Breach of Contract; (6) emails from attorneys; and (7) plans and construction notes on the building, which reflect the building contains over 11,000 square feet of space.

The trial court granted AES's Traditional Motion for Summary Judgment for All Claims without specifying the basis for its ruling. The trial court's order stated that "[a]fter reading the motion, the response, and all relevant summary judgment evidence brought to the Court's attention, the Court is of the opinion the Motion should be granted."

## II. Analysis

### A. Timeliness of Motion for Summary Judgment

Plaza contends that the trial court should have denied AES's Motion for Summary Judgment, because it was untimely. Specifically, Plaza argues that the

8

Docket Control Order signed on September 3, 2019, provided a summary judgment deadline of February 15, 2020.

"Trial courts have discretion to manage their dockets and to schedule cases so the court may conveniently and efficiently dispose of the cases that are on its docket." *Coe v. Weller, Green, Toups & Terrell, LLP*, No. 09-18-00365-CV, 2020 WL 6929662, at *8 (Tex. App.—Beaumont Nov. 25, 2020, pet. denied) (mem. op.) (citing *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982)). The record shows that AES initially filed its Traditional Motion for Summary Judgment in January 2020. The record also shows this case was continued, and in April 2020, the trial court entered a new Docket Control Order with a January 19, 2021 trial date. The new Docket Control Order provided that all motions for summary judgment should be set for submission thirty days before trial, which would have been December 20, 2020. On October 27, 2020, AES filed its Traditional Motion for Summary Judgment for All Claims and attached additional evidence, including among other things, deposition testimony of Rogers. AES set its Traditional Motion for Summary Judgment for submission on December 4, 2020. Plaza does not claim that it did not have adequate notice or was not afforded an opportunity to respond to AES's re-filed Traditional Motion for Summary Judgment that included additional evidence. *See Trevino v. Trevino*, 64 S.W.3d 166, 170 (Tex. App.—San Antonio 2001, no pet.) (noting that plaintiffs did not argue they did not have adequate notice or an

opportunity to respond to defendant); *see also Ihde v. Nationstar Mortg. LLC*, No. 05-20-00576-CV, 2021 WL 5104374, at *3 (Tex. App.—Dallas Nov. 3, 2021, pet. denied) (mem. op.) (noting same). Rather, the record establishes that Plaza responded to AES's Motion for Summary Judgment, and the trial court considered Plaza's response in its ruling.

Despite Plaza's assertion to the contrary, the record shows that AES's Traditional Motion for Summary Judgment as to all claims was timely filed under the applicable Docket Control Order. Regardless, given the rescheduled trial setting, newly conducted discovery, and Plaza's opportunity to respond, we cannot say the trial court clearly abused its discretion by considering AES's Traditional Motion for Summary Judgment. *See Clanton*, 639 S.W.2d at 931 (explaining that "the court is given wide discretion in managing its docket" and reviewing court will not interfere absent a clear abuse of discretion); *Coe*, 2020 WL 6929662, at *8 (noting same).

## B. Motion for Summary Judgment

Plaza challenges the summary judgment in favor of AES and argues that: 1) collateral estoppel does not apply to this case; 2) the impact of AES's breach created fact issues related to causation and damages; and 3) the deemed admissions AES relied on were merit-preclusive, the result of a good-faith mistake, and should have been set aside.

We review a trial court's ruling on a motion for summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018); *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). In doing so, we review the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant and indulging every reasonable inference in its favor. *See Lujan*, 555 S.W.3d at 84. With a traditional motion for summary judgment, the movant has the burden to show no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See id.*; *see also* Tex. R. Civ. P. 166a(b), (c). "An issue is conclusively established 'if reasonable minds could not differ about the conclusion to be drawn from the facts in the record.'" *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) (quoting *Childs v. Haussecker*, 974 S.W.3d 31, 44 (Tex. 1998)). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84.

**1. Deemed Admissions**

We next turn to Plaza's argument that the deemed admissions AES relied upon were merit-preclusive and should have been set aside. Plaza contends that it did not act in bad faith or with callous disregard for the rules with respect to the Requests for Admissions and good cause existed for its failure to answer, because the firm representing Plaza was going through a law firm merger and the reason the

11

admissions were not answered was the result of "unfortunate oversight." Plaza further asserts that AES failed to produce any evidence in its summary judgment to support that Plaza's failure to respond to the Requests for Admissions "was the result of flagrant bad faith or callous disregard."

A trial court has broad discretion to permit or deny the withdrawal of deemed admissions but cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles. *Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011) (per curiam); *Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005) (per curiam).

When a party is served with requests for admissions and fails to respond, each request is deemed admitted by operation of law. *See* Tex. R. Civ. P. 198.2(c). "A matter admitted under this rule is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." *Id.* 198.3. A trial court can allow the withdrawal or amendment of an admission if (1) a party shows good cause, and (2) the trial court finds that the parties relying on the deemed admissions will not be unduly prejudiced and presentation of the action's merits will be subserved by allowing the amendment or withdrawal of the admission. *See id.* A party may establish good cause by showing its failure to respond was accidental or a mistake, rather than intentional or the result of conscious indifference. *Wheeler*, 157 S.W.3d at 442. To establish a lack of undue prejudice, a party must show "that withdrawing the admission will not delay the trial or significantly hamper

12

the opposing party's ability to prepare for it." *Romero v. D.R. Kidd Co., Inc.*, No. 14-18-00057-CV, 2019 WL 2939253, at *3 (Tex. App.—Houston [14th Dist.] July 9, 2019, no pet.) (mem. op.) (citing *Wheeler*, 157 S.W.3d at 442).

Typically, a party seeking withdrawal of admissions has the burden of proof. *Id.* at *3. However, when using deemed admissions as the basis for summary judgment due process concerns are implicated, and the movant must show flagrant bad faith or callous disregard as an element of their summary judgment burden. *See Marino*, 355 S.W.3d at 634; *Wheeler*, 157 S.W.3d at 443–44. "'Bad faith is not simply bad judgment or negligence, but the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose.'" *Time Warner, Inc. v. Gonzalez*, 441 S.W.3d 661, 666 (Tex. App.—San Antonio 2014, pet. denied) (citation omitted). Evidence that shows "'a party is mindful of pending deadlines and nonetheless either consciously or flagrantly fails to comply with the rules'" satisfies the flagrant bad faith or callous disregard standard. *Ramirez v. Noble Energy, Inc.*, 521 S.W.3d 851, 860 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *In re TT-Fountains of Tomball, Ltd.*, No. 01-15-00817-CV, 2016 WL 3965117, at *12 (Tex. App.—Houston [1st Dist.] July 21, 2016, orig. proceeding) (mem. op.)).

When no showing of flagrant bad faith or callous disregard for the rules is made, it is presumed that presentation of the merits would be served by allowing the

13

withdrawal of the deemed admissions. *See Ralls v. Funk*, 592 S.W.3d 178, 183 (Tex. App.—Tyler 2019, pet. denied).

Requests for admissions are improper and ineffective when used to establish controverted issues that constitute the fundamental legal issues in a case. *Cedyco Corp. v. Whitehead*, 253 S.W.3d 877, 880 (Tex. App.—Beaumont 2008, pet. denied) (reversing summary judgment based on deemed admission concerning which party was the "sole legal owner" of a judgment). Requests for admissions are meant to simplify trials and are useful to address uncontroverted matters or evidentiary ones but were not intended to be used to force a party to admit the validity of his claims or concede his defenses. *See Marino*, 355 S.W.3d at 632.

The Requests for Admission that Plaza failed to answer included the following:

> 4. Admit that Plaintiff was in breach of the lease agreement with Crawford Strategies, LLC even if the septic design submitted on June 4, 2018 had contained Stephanie L. Sturman's signed seal that was signed physically by Stephanie L. Sturman.
> 6. Admit that Defendant's signing of Stephanie L. Sturman's signature did not cause Crawford Strategies, LLC to terminate the lease with Plaintiff.
> 7. Admit that Defendant's signing of Stephanie L. Sturman's signature did not cause any of the damages alleged in Plaintiff's lawsuit against Defendant.
> 9. Admit that Plaintiff was not in breach of the lease with Crawford Strategies, LLC with regard to any of the project relating to the septic system when the design was accepted in the summer of 2018.
> 10. Admit that Plaintiff was in breach of the lease with Crawford Strategies, LLC for terms unrelated to the septic system.

11. Admit that Plaintiff would have suffered the same losses relating to the lease agreement with Crawford Strategies, LLC whether or not Defendant was involved in the septic system project.

AES supported the Traditional Motion for Summary Judgment with counsel's affidavit, wherein he averred that he served the Requests for Admissions to Plaza's attorney on September 10, 2019, via email with additional discovery requests. Counsel also outlined repeated failures by Plaza's attorney to answer discovery and averred that he had to file at least two motions to compel before Plaza responded to discovery. AES included the email sent to Plaza's attorney with the discovery requests and counsel averred he received an email from that same address later in the day. Finally, counsel averred that he still had not received any responses to the Requests for Admissions. This was despite filing the First Motion for Summary Judgment in January 2020 based on those same deemed admissions. Although in its Response Plaza attributed the failure to answer the Requests for Admissions to an oversight and law firm merger, Plaza did not include an affidavit or any evidence to controvert AES's counsel's affidavit averring that Plaza repeatedly failed to fully answer discovery and Plaza still had not responded to the Requests for Admissions.

These deemed admissions were merit-preclusive and the basis of a summary judgment motion, therefore AES bore the burden of establishing that Plaza acted in bad faith or with callous disregard. *See Time Warner, Inc.*, 441 S.W.3d at 666. We do not need to go through each admission in painstaking detail, as the gist of them

is clear. *See Medina v. Zuniga*, 593 S.W.3d 238, 246 (Tex. 2019). AES asked Plaza to admit its sole responsibility for the Tenant breaching the lease and for any damages Plaza incurred. *See id.*

The affidavit of AES's counsel averring that it sent the Requests for Admissions and outlining Plaza's pattern of not fully answering discovery absent a motion to compel, plus Plaza's failure to ever respond to the Requests for Admissions is some evidence from which the trial court could have determined there was flagrant bad faith or a callous disregard of the rules, especially where AES's First Motion for Summary Judgment put Plaza on notice of its failure to respond to the Requests for Admissions approximately nine months earlier. *See In re TT-Fountains of Tomball, Ltd.*, 2016 WL 3965117, at *11 ("[T]he length of time that a response is tardy may factor into whether a party acts with the requisite state of mind sufficient to deny his motion to withdraw when he is aware of being served with discovery[.]"); *Darr v. Altman*, 20 S.W.3d 802, 808 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("While not receiving the requests for admissions would have constituted good cause for allowing the withdrawal of the deemed admissions, waiting three months after receiving the motion for summary judgment with the attached requests to either answer the requests or move to withdraw the deemed admissions vitiated that good cause."). Because there is some evidence in the record to support a finding of flagrant bad faith or callous disregard of the

16

rules, AES negated the existence of good cause, and the trial court did not abuse its discretion in implicitly denying Plaza's request to withdraw the deemed admissions. *See Estate of Campos*, No. 04-19-00350-CV, 2020 WL 1866460, at \*5 (Tex. App.—San Antonio Apr. 15, 2020, no pet.) (mem. op.) (reasoning same).

Before we address Plaza's remaining arguments, including the collateral estoppel argument and the existence of issues of material fact, we determine if the deemed admissions have a conclusive effect. *See id.* at \*6. Generally, once admissions are deemed, they constitute judicial admissions and "may not be contradicted by any evidence, including summary judgment affidavits." *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 502 (Tex. App.—San Antonio 2004, pet. denied) (citing *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989)); *see also Neal v. Wisconsin Hard Chrome, Inc.*, 173 S.W.3d 891, 894 (Tex. App.—Texarkana 2005, no pet.). "Admissions of *fact* on file at the time of a summary judgment hearing are proper summary judgment proof and will, therefore, support a motion for summary judgment." *Cedyco Corp.*, 253 S.W.3d at 880 (emphasis original) (citations omitted); *see also* Tex. R. Civ. P. 166a(c). However, requests for admissions asking a party to admit or deny purely legal issues are improper, and deemed admissions involving purely legal issues are of no binding effect. *Cedyco Corp.*, 253 S.W.3d at 880 (citations omitted); *see also Maswoswe v. Nelson*, 327 S.W.3d 889, 896–97 (Tex. App.—Beaumont 2010, no pet.) (citations

17

omitted); *Boulet v. State*, 189 S.W.3d 833, 838 (Tex. App.—Houston [1st Dist.] 2006, no pet.). This is because the primary purpose of requests for admissions is to simplify trials by eliminating matters about which there is no real controversy. *See Marino*, 355 S.W.3d at 632*; Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996) (per curiam); *Cedyco Corp.*, 253 S.W.3d at 880. Here, AES asked Plaza to admit its claims were invalid and concede AES was not liable, which were matters in dispute. Requests for admission were not intended for this purpose. *See Marino*, 355 S.W.3d at 632; *Stelly*, 927 S.W.2d at 622.

Due-process concerns arise when deemed-admissions resulting in a penalty akin to a death-penalty sanction are attributable to counsel that falls not on counsel but instead falls on the client. *See Medina*, 593 S.W.3d at 245 ("Our cases on [the implications arising from deemed admissions] are not constitutional holdings per se, but rather reflect judicially created prophylactic measures designed to ensure that our rules of civil procedure—rules this Court promulgated—are not applied in a way that risks violating due process."). Since the motion for summary judgment AES filed hinges on merits-preclusive requests for admissions, we agree with Plaza the requests improperly seek admissions of purely legal issues and for that reasons constitute improper summary judgment evidence. *See Marino*, 355 S.W.3d at 632; *Cedyco Corp.*, 253 S.W.3d at 880–81. Accordingly, we consider the parties' remaining summary judgment evidence to determine if it raises genuine issues of

18

material fact. *See* Tex. R. Civ. P. 166a(c); *see also Maswoswe*, 327 S.W.3d at 896–97; *Cedyco Corp.*, 253 S.W.3d at 880–81.

## 2. Collateral Estoppel

AES moved for summary judgment asserting collateral estoppel, arguing that the trial court's determination in the lawsuit between Tenant and Plaza that Plaza breached the contract was determinative in this proceeding. Plaza counters that AES failed to timely plead the affirmative defense of collateral estoppel, and collateral estoppel does not apply in this case.

In our discussion of the timeliness of the motion for summary judgment, we have already outlined the new trial setting of January 2021 and discussed the applicable Docket Control Order. The Docket Control Order set a deadline of pleading amendments as 150 days before trial, which would have placed the pleading deadline in August 2020. AES asserted the affirmative defense of collateral estoppel in its First Amended Answer filed in February 2020, well within the applicable deadlines.

A party asserting the bar of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action. *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002) (citations omitted).

19

Collateral estoppel is designed to promote judicial efficiency and prevent inconsistent judgments by preventing the relitigation of an ultimate issue of fact. *Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). It does not require mutuality and applies when the party against whom it is raised had a full and fair opportunity to litigate the issue in the prior suit. *Id.*; *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990). "A party in a subsequent suit may invoke collateral estoppel even if it did not participate in the first suit, if the party against whom collateral estoppel is asserted was either a party or in privity with a party in the earlier litigation." *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 500 S.W.3d 26, 44–45 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *Eagle Props.*, 807 S.W.2d at 721).

Collateral estoppel is an affirmative defense. *See* Tex. R. Civ. P. 94. When a party moves for summary judgment on an affirmative defense, as here, the movant must plead and conclusively prove each element of the affirmative defense, thus defeating the plaintiff's cause of action. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *CommunityBank of Tex., N.A. v. Orange Cty. Ins. Brokerage, Inc.*, No. 09-14-00033-CV, 2016 WL 4572278, at *4 (Tex. App.—Beaumont Sept. 1, 2016, pet. denied) (mem. op.).

Generally, there cannot be estoppel by alternative holdings. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 522 (Tex. 1998);

20

*Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 97 (Tex. App.—Eastland 2010, pet. denied). "'If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.'" *Johnson & Higgins*, 962 S.W.2d at 522 (quoting Restatement (Second) of Judgments § 27, cmt. i (Am. Law. Inst. 1982)). On the other hand,

> [i]f the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations. In contrast to the case discussed in Comment *i,* the losing party has here obtained an appellate decision on the issue, and thus the balance weighs in favor of preclusion.

*Id.* (quoting Restatement (Second) of Judgments § 27, cmt. o (Am. Law. Inst. 1982)).

In the present case, Plaza asserts claims against AES for not only breach of contract, but fraud, breach of fiduciary duty, negligent misrepresentation, and civil conspiracy. AES contends that the issue of Plaza's breach and specifically, the issue of its failure to provide the agreed upon 10,900 square footage to Tenant was determinative to the judgment in the first case. AES argues that determination is dispositive to all causes of action Plaza raises in this case, as it conclusively negates causation and damages.

A careful examination of the summary judgment record in this case shows that Tenant's Traditional Motion for Partial Summary Judgment in the first case was

21

based not only on Plaza's failure to provide adequate square footage but also Plaza's failure to timely complete construction within the ninety-day period provided by the lease agreement and subsequent failure to return Tenant's money paid under the contract. Tenant specifically argued in its Motion for Summary Judgment that it "discovered that Plaza City was unable to continue construction due to the denied permit for construction of the septic, and that the plans submitted were under capacity to accommodate their business model." Tenant further cited to factual allegations pleaded by Plaza in this lawsuit regarding AES's conduct and the denial of the permit as causing the construction delay to support its Traditional Motion for Partial Summary Judgment. The trial court granted Tenant's Motion for Summary Judgment as to Liability for Breach of Contract against Plaza without specifying whether it was due to Plaza's failure to provide adequate square footage or construction delays brought about by the septic permitting issues, which implicates AES's conduct. Because the trial court's summary judgment in favor of Tenant in the first case was based on determinations of two issues, either of which standing independently would be sufficient to support the determination that Plaza breached the agreement with Tenant, the judgment is not conclusive with respect to either issue standing alone. *See id.*; *Caprock Inv. Corp.*, 321 S.W.3d at 97.

22

Because AES failed to conclusively establish its affirmative defense of collateral estoppel, the trial court should not have granted summary judgment on that basis. *See* Tex. R. Civ. P. 94; *Chau*, 254 S.W.3d at 455.

### 3. Issues of Material Fact

Finally, Plaza asserts the evidence shows fact issues exist regarding AES's breach and the damages caused by that breach. Viewing the evidence in the light most favorable to the nonmovant, we agree. *See Lujan*, 555 S.W.3d at 84.

AES relies on Plaza's deemed admissions and argues those admissions prove no causation and damages. As previously discussed, these requests improperly asked Plaza to admit purely legal questions and therefore, were improper summary judgment evidence, so we will consider the remaining summary judgment evidence to determine if genuine issues of material fact exist. *See Maswoswe*, 327 S.W.3d at 896–97; *Cedyco Corp.*, 253 S.W.3d at 881.

The summary judgment evidence presented by the parties shows that Plaza entered into an agreement with Tenant to provide 10,900 square footage of space in their commercial building, and the construction buildout should be completed within ninety days of the lease's commencement. The evidence further established that Plaza hired AES to help provide plans for a redesigned septic system and assist with the permitting process; AES used a sanitarian's seal and signature without her knowledge, and the MCPD denied the septic permits on this basis. Documents in the

23

summary judgment record show that Tenants demanded to be let out of the lease "[d]ue to the recent fraudulent activities surrounding the septic permit involving our potential business[.]" Although AES presented some evidence in the form of Rogers's deposition testimony that this caused only a brief delay and as such argued it was an immaterial breach, the Tenant's demand letter cited the activities surrounding the septic permit as a deciding factor in terminating the lease. Contrary to AES's claims that Plaza failed to provide the required square footage, which had nothing to do with the septic permits, Plaza provided evidence in the form of construction and design plans that showed over 11,000 square feet of space, including a second floor.

Because reasonable minds could differ about conclusions drawn from the facts in the record, AES has failed to conclusively negate causation or damages. *See Hansen*, 525 S.W.3d at 681; *Childs*, 974 S.W.3d at 44. Viewing the evidence in the light most favorable to the nonmovant, we conclude that AES failed to meet its burden of showing no genuine issues of material fact remain as to its claims and that it is entitled to judgment as a matter of law. *See id.*; *see also* Tex. R. Civ. P. 166a(b), (c). We sustain Plaza's sole issue.

### III. Conclusion

We conclude that the trial court improperly granted summary judgment in this case based on deemed admissions and collateral estoppel. We further conclude that

24

the evidence shows genuine issues of material fact remain. Accordingly, we reverse the trial court's judgment and remand for further proceedings.

REVERSED AND REMANDED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on August 9, 2022
Opinion Delivered December 1, 2022

Before Golemon, C.J., Kreger and Horton, JJ.